UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(Eastern Division)

| | |
|---|---|
| In re:<br><br>**FREEDOM WIND TUNNEL, LLC,**<br><br>Debtor. | **Chapter 11**<br>**Case No. 24-10082 (CJP)** |

### MOTION TO EXTEND TIME FOR ASSUMPTION OR REJECTION OF LEASES AND REQUEST FOR *EXPEDITED* DETERMINATION

Pursuant to 11 U.S.C. § 365(d)(4), Fed. R. Bankr. P. 6006, and MLBR 6006-1, the debtor and debtor-in-possession in the above-captioned cases ("Debtor") respectfully requests that the Court, *on an expedited basis*, grant a ninety (90) day extension of time in which the Debtor may assume or reject its interest in its nonresidential real property Lease (as defined below) for the Property (as defined below), through August 13, 2024. The current deadline for assumption or rejection expires on May 15, 2024. The Debtor is continuing to work towards finalizing an agreement for postpetition financing that, if approved by the Court, will be an important part of the reorganization process for the Debtor and allow the Debtor to complete the commissioning of the skydiving simulator that is at the heart of the Debtor's business plan. The extension requested herein should provide adequate opportunity to consummate the financing and allow the Debtor to make more-reasoned decisions about assumption of the Lease and, accordingly, the relief requested is appropriate. In further support of this motion, the Debtor states as follows:

#### FACTUAL BACKGROUND

1. On January 16, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Massachusetts.

1

2.      The Debtor continues to operate as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No Official Committee of Unsecured Creditors has been appointed in this case.

3.      The Debtor is a Delaware limited liability company formed on or about April 15, 2015 and is authorized by the Commonwealth of Massachusetts to conduct any lawful business including indoor skydiving.

4.      On or about July 2, 2019 the Debtor entered into a Ground Lease, Covenant and Agreement[1] (the "Lease") with NPP Development LLC, a Delaware limited liability company ("Landlord") in order to develop and construct an indoor skydiving facility and associated function space located at 21 Patriot Place, Foxboro MA (the "Property").

5.      FWT is a disabled-veteran-owned business that was created to provide an indoor skydiving experience that allows its customers to replicate the experience of skydiving in a secure, controlled environment. In addition to skydiving, once fully operational, FWT will also offer simulators that simulate the experience of parachuting into familiar and famous locations.

6.      The skydive simulator is a state-of-the-art system that includes a vertical tunnel, an extremely powerful fan powered by an electric motor and an industrial grade chiller to moderate the temperature inside the tunnel.

7.      The premises, once completed, will also offer function space for parties, training space and a rolling concession cart, and will serve as a function and meeting space for corporate events, team building, private parties and other functions, all of which are intended to augment the primary usage 'indoor skydiving' of the overall space.

---

[1] The Lease was amended on July 24, 2019, December 13, 2019 and October 27, 2020.

8. Since entering into the Lease, the Debtor has constructed a 124-foot-tall building at the Property, consisting of approximately 12,000 usable square feet. The Property is located adjacent to the main entrance to Gillette Stadium (the "Project"). The Project is approximately eight weeks away from completion, when, upon completion, it is anticipated that the first flights for consumers will be able to launch.2

9. On or about April 30, 2021 the Debtor entered into several financing transactions with Hanscom Federal Credit Union ("HFCU") in order to fund the development of the Project. The Debtor executed a note in the face amount of $14,327,792 and granted HFCU a leasehold mortgage on the Property.

10. As of the Petition Date, HFCU was owed approximately $14,327,792. The Debtor reserves the right to contest HFCU's claim or any other secured claims asserted against it.

11. On or about February 8, 2021, FWT entered into a guaranteed maximum price construction contract (the "GMP Contract") with Erland Construction, Inc., ("Erland") as General Contractor for the Project. The total contract price was $8,953,294 and the commencement phase of the Project was scheduled to begin March of 2021 and to be completed in thirteen months.

12. A significant factor in FWT's inability to open to the public, a critical concern of the Landlord, was the lack of coordination by Erland with the tunnel component vendors, making it difficult for the vendors to complete the necessary fabrications. This lack of coordination hampered the construction schedule because many of the tunnel components had to be fabricated and shipped from, overseas, mainly from Turkey and Europe.

---

2 Debtor-in-possession financing is required in order to continue developing the Project and to attain the Amusement License issued by the State of Massachusetts with this being the first wind tunnel of its kind in the state.

13. On June 9, 2023, FWT and Erland entered into Prime Contract Change Order #011 and the related Freedom Wind Settlement to address the existing concerns between the parties to the GMP Contract relating to delays in completion of the Project. In spite of the settlement that was reached, Erland was unable to meet the revised timeline. Delays began to occur almost immediately and, despite FWT's requests for corrective action, the Project experienced continuing delays.

14. Erland has maintained that it has completed its responsibilities under the GMP Contract and asserts that possession, custody and control must be transferred to the Debtor and that a Substantial Completion Certificate should be issued and recorded. The Debtor fundamentally disagrees with Erland that it has completed the Project.

15. Due to the various delays in construction and an ongoing disputes with Erland, the Project's projected opening date was continually pushed back.

16. On May 4, 2021, Erland recorded a Notice of Contract on the property with the Norfolk county Registry of deeds and on November 17, 2023 filed its Statement of Account asserting that it was owed $2,003,042.

17. On November 16, 2023, the Landlord issued a notice of default pursuant to the terms of the Lease based upon the Debtor's failure to open to the public on or before December 31, 2021. The Debtor was required to cure that default on or before December 16, 2023. That deadline was extended by agreement through and including January 16, 2024.

18. The Landlord issued a second default notice on or about November 22, 2023 relating to Erland's mechanic's lien recorded against the Property. The deadline to cure this default was December 7, 2023 which was also extended by agreement.

4

19. During the course of this chapter 11 proceeding, the Debtor intends to complete construction of the Project, obtain the necessary permits and licenses, and open to the public as quickly and safely as possible so that it can begin generating revenue to support a plan of reorganization to repay its creditors.

20. The Debtor intends to continue its operations in the ordinary course of business and to restructure its indebtedness through a plan of reorganization.

## RELIEF REQUESTED

21. Pursuant to this Motion, the Debtor seeks the entry of an order extending the time within which the Debtors may assume or reject the Lease for an additional ninety (90) days, through and including August 13, 2024.

22. Section 365 (d)(4) of the Bankruptcy Code provides, in relevant part, as follows:

(A) Subject to subparagraph (B), an unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected, and the trustee shall immediately surrender that nonresidential real property to the lessor, if the trustee does not assume or reject the unexpired lease by the earlier of—

    (i) the date that is 120 days after the date of the order for relief; or

    (ii) the date of the entry of an order confirming a plan.

(B)
    (i) The court may extend the period determined under subparagraph (A), prior to the expiration of the 120-day period, for 90 days on the motion of the trustee or lessor for cause.

11 U.S.C. § 365(d)(4). Absent an Order extending time under Section 365(d)(4) of the Bankruptcy Code, the statutory one hundred twenty (120) day period for the Debtor to assume or reject the Lease will expire on May 15, 2024 and along with it, any opportunity for the Debtor to restructure or sell the business. The Debtor believes that commissioning the wind tunnel and opening to the public as a going concern and assumption of the Lease will lead to the more value and the best outcome for all creditors.

23. Section 365 (d)(4) of the Bankruptcy Code empowers the Bankruptcy Court to extend the time to assume or reject nonresidential real property leases where the debtor is lessee. As courts of equity, bankruptcy courts "are compelled to disfavor a lease forfeiture that would imperil the debtor's reorganization and impede rehabilitative goals." *See, In re Victoria Station, Inc.*, 840 F.2d 682, 684 (9th Cir. 1988).

24. Cases uniformly hold that a trustee or debtor in possession in a reorganization proceeding is entitled to a "reasonable time" to assume or reject an executory contract or lease and that the Court should preserve the status quo while the trustee or debtor in possession makes determinations to assume or reject. *See, In re Gulfco Inv. Corp.*, 520 F.2d 741, 743-44 (10th Cir. 1975) (enjoining rescission of land purchase contracts for failure to make installment payments while trustee decided whether to assume or reject, and holding that the district court had "the power to preserve the status quo while the trustee is utilizing the reasonable period of time to make up his mind"); *In re Attorney's Office Management, Inc.*, 29 B.R. 96, 98 (Bankr. C.D. Cal. (1983).

25. In determining what constitutes a "reasonable time" under Section 365(f)(4) of the Bankruptcy Code, courts generally apply a multifactor test. Factors weighing in favor of extending the time available to assume or reject leases include:

>(a) Whether leases are a primary asset in the Chapter 11 proceeding. *Theatre Holding Corp. v. Mauro*, 681 F.2d 102 (2d. Cir. 1982) (*per curiam*); *In re Victoria Station, Inc.*, 88 B.R. 231, 236 n. 7 (B.A.P. 9th Cir. 1988), aff'd, F.2d 1380 (9th Cir. 1989);

>(b) Whether the landlord would reap a windfall as a result of the debtor's forfeiture of the lease, as where the lessor has a reversionary interest in a building built by the tenant on the landlord's land. *Theatre Holding*, 681 F.2d at 105 n.3; *In re Bon Ton Restaurant and Pastry Shop, Inc.*, 52 B.R. 850, 853 (Bankr. N.D. Ill. 1985) (11 U.S.C. § 365 (d)(4) is not to be used "lessor… to recapture a lease and obtain a windfall to which he may not be equitably entitled");

(c) Whether the debtor has not had the time necessary to intelligently "…appraise its financial situation and the potential value of its assets in terms of the formulation of a plan." *Theatre Holding*, 681 F.2d at 106 (quoting *In re Midtown Skating Corp.*, (Bankr. S.D.N.Y. 1980);

(d) Whether the lessor continues to receive monthly rental payments. *Bon Ton*, 52 B.R. at 855;

(e) Whether the case is complex and involves large numbers of leases. *In re Curio Shoppes, Inc.*, 55 B.R. 148, 154 (Bankr. D. Conn. (1985);

(f) Whether there is or may be a need for judicial determination of whether a lease exists, since the trustee or debtor-in-possession "cannot be required to commit itself to the investment which assumption of the [l]ease would require unless it knows that it has a lease." *In re Family Showtime Theatres, Inc.*, 58 B.R. 679, 684 (Bankr. E.D.N.Y. 1986);

(g) Whether the debtor requires additional time to assess the profitability of a location. *In re Musikahn Corp.*, 57 B.R. 942, 944 (Bankr. E.D.N.Y. 1985);

(h) Whether the debtor is attempting to obtain loans which would be used to provide working capital and satisfy post-petition rent obligations. *Id.*;

(i) Whether the debtor has indicated an intent to assume (or reject). *Bon Ton*, 52 B.R. 858; and

(j) Whether there exist any other facts indicating the lack of a "reasonable time to decide whether to assume or reject." *Theatre Holding,* 681 F.2d at 105. *In re Wedtech Corp.*, 72 B.R. 464, 471-72 (Bankr. S.D.N.Y. 1987) (summarizing prior law).

26.     Because lease rights can be critically important to a debtor's reorganization effort and determining the best course forward with the complex process of post-petition financing, plan or sale decisions in the reorganization process that occupy the debtor's efforts often until just prior to the confirmation of a plan, courts regularly refuse to set rigid deadlines by which leases must be assumed or rejected. *See, e.g., In re Hub of Military Circle, Inc.*, 13 B.R. 288 (Bankr. E.D. Va. 1981) ("The Debtor has the absolute right, by statute, to assume the lease after bankruptcy and to cure any defaults. And a debtor has until before confirmation of a plan to do this. That point has not arrived.") (other citations omitted).

7

27. In making its determination, the Court should "consider not only the interest of the landlord but also those of the Debtor and its creditors." *Queens Boulevard Wine & Liquor Corp. v. Blum*, 503 F.2d 202, 206 (2d Cir. 1974), *as quoted in Wedtech*, 72 B.R. at 470. Indeed, Section 365(d)(4) of the Bankruptcy Code deadline frequently is extended for the duration of the case. *In In re Whitcomb & Keller Mortgage Co*, 715 F.2d 375 (7th Cir. 1983), the Seventh Circuit ruled that a debtor generally should not be forced to assume or reject a contact prior to plan confirmation. The Seventh Circuit endorsed and cited the lower court's reasoning as follows:

> Since a debtor is in limbo until confirmation of a plan, it is understandably difficult to commit itself to assuming or rejecting a contract much before the time for confirmation of a plan. Thus, the Code allows for the assumption or rejection of the executory contract in its plan. This procedure insures that the debtor is not in the precarious position of having assumed a contract relying on confirmation of a particular plan, only to find the plan to have been rejected.

*Id*. at 378, n.3; *See also, In re New York Deli, Ltd.*, 41 B.R. 198 (Bankr. D. Haw. 1984) (debtor not compelled to assume or reject lease even though nine months had passed since petition for relief had been filed.); *In re Victoria Station, Inc.*, 88 B.R. at 237 n.9 (approving multiple extensions under Section 365 (d)(4)).

28. Adequate grounds exist for the requested extension. The Debtor is in the midst of finalizing an agreement to obtain postpetition financing that, subject to Court approval, lies at the center of the Debtor's efforts to commission the wind tunnel and then open to the public. The requested extension should provide the Debtor with an adequate opportunity to consummate postpetition financing and thereafter address assumption of the Lease.

29. The Debtor requests a ninety (90) day extension of time in which to assume or reject the Lease, through and including August 13, 2024. The requested extension is reasonable

in the circumstances of the present case, and the factors cited above overwhelmingly support the Debtor's request.

30. The Debtor intends to make postpetition rent payments through the date the Lease is assumed or rejected, in accordance with the terms of the orders previously approved by this Court. Accordingly, the Landlord will not be prejudiced by the proposed extension of time.

31. If the Debtor is forced to assume the Lease now, then the estate may be unnecessarily burdened with enormous administrative expenses if a decision is later made to reject the Lease. *See In re Frontier Properties, Inc*. 979 F.2d 1358, 1367 (9th Cir. 1992) (when executory contract is assumed and later rejected, all of the liabilities under the contract flowing from the rejection, including interest, are entitled to priority as administrative expenses of the bankruptcy estate). Similarly, premature rejection of the Lease would effectively end the Debtor's efforts to reorganize and be detrimental to all of the parties in interest here.

32. For these reasons, the Debtor believes the Court should enter an Order, pursuant to Section 365 (d)(4) of the Bankruptcy Code, extending the period in which the Debtors must assume or reject the Leases through and including August 13, 2024, without prejudice to the Debtor seeking any additional extensions.

## REQUEST FOR EXPEDITED DETERMINATION

33. The Debtor respectfully requests that the Court rule on this Motion on an expedited basis pursuant to LBR 9013-1(g). The Debtor requests expedited determination because the statutory deadline for assumption or rejection of the Lease will run on May 15, 2024 and the Debtor wishes to have the Motion and any opposition thereto heard sufficiently in advance of that deadline.

WHEREFORE, the Debtors respectfully request that the Court enter an Order:

i. Pursuant to 11 U.S.C. § 365(d)(4), extending the time by which the Debtors must assume or reject unexpired leases of non-residential real property in which the Debtors are lessee through and including August 13, 2004, without prejudice to the Debtor's seeking further extensions; and

ii. Granting such other relief as is just and proper.

                                      Respectfully submitted,

*/s/ Jesse I. Redlener*
Jesse I. Redlener (BBO# 646851)
Lee Harrington (BBO #643932)
ASCENDANT LAW GROUP LLC
2 Dundee Park Drive, Suite 102
Andover, MA 01810
(978) 409-2038
jr@ascedantlawgroup.com
lh@ascendantlawgroup.com

Dated: May 3, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that, on May 3, 2024, a true and correct copy of the foregoing Motion was served on those persons entitled to service through the Court's ECF system.

/s/ Jesse I. Redlener
Jesse I. Redlener

## SERVICE LIST

**BY ECF and/or ELECTRONIC MAIL**

William J Amann on behalf of Creditor Systems Technology, Inc.
wamann@amburlaw.com, cshaw@amburlaw.com

Paul W. Carey on behalf of Creditor Micah Chase
pcarey@mirickoconnell.com, bankrupt@mirickoconnell.com

Jennifer V. Doran on behalf of Creditor NPP Development, LLC
jdoran@haslaw.com, calirm@hinckleyallen.com;kabarrett@hinckleyallen.com

Donald Ethan Jeffery on behalf of Creditor Erland Construction, Inc.
ejeffery@murphyking.com, dkonusevska@murphyking.com

Richard King - B
USTPRegion01.BO.ECF@USDOJ.GOV

James S. LaMontagne on behalf of Other Party First Insurance Funding, a Division of Lake Forest Bank & Trust Company, N.A>
jlamontagne@sheehan.com,
nhbankruptcycourt@sheehan.com;asrimouksavanh@sheehan.com;kstavaski@sheehan.com

James S. LaMontagne on behalf of Other Party James LaMontagne
jlamontagne@sheehan.com,
nhbankruptcycourt@sheehan.com;asrimouksavanh@sheehan.com;kstavaski@sheehan.com

Steven C. Reingold on behalf of Creditor Premier Mechanical, LLC
steven.reingold@saul.com, shaquille.williams@saul.com

Laurence K. Richmond on behalf of Creditor Trane U.S. Inc.
lrichmond@richmondslaw.com

Adam J. Ruttenberg on behalf of Creditor Hanscom Federal Credit Union
aruttenberg@beaconlawgroup.com

Heather Sprague on behalf of Assistant U.S. Trustee Richard King - B
Heather.Sprague@usdoj.gov

Gary M. Weiner on behalf of Creditor MAS Building & Bridge, Inc.
GWeiner@Weinerlegal.com, mshapiro@weinerlegal.com;mstearns@weinerlegal.com