UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In Re<br><br>FREEDOM WIND TUNNEL LLC<br>   Debtor | Case No.  24-10082-CJP<br>Chapter 11 |

EXPEDITED APPLICATION OF EXAMINER TO EMPLOY BROKER

     John O Desmond, the Chapter 11 Examiner of Debtor Freedom Wind Tunnel LLC, moves this court for an order authorizing the employment of Arthur Petropoulos of Hill View Partners as Broker/Consultant pursuant to 11 U.S.C.s. 327, Fed R. Bankr. P. 2014 and MLBR 2014-1.  The Examiner states the following in support of the application.

     1.  The petition commencing this case was filed on January 16, 2024.   Pursuant to Section 1107(a) and 1108 of the Bankruptcy Code, the Debtor continues to manage its business and financial affairs as a debtor-in-possession.  The Debtor is in the process of building an indoor skydiving facility at Patriot Place in Foxboro, Massachusetts.  The indoor skydiving facility is not complete and has never operated.

     2.  On May 22, 2024 the Court allowed the motion of Creditor Erland Construction Inc. for the appointment of a Chapter 11 Examiner, Docket No. 138.  On May 31, 2024 the United States Trustee filed an Application for and Certificate of Appointment of John O. Desmond as Examiner, Docket No. 150.  Paragraph 3(g) of the Order appointing an Examiner provided that the Examiner may retain professionals to "market, seek offers for and seek the authority to sell the Debtor's Assets or any part of Debtor's Assets."

1

3. Pursuant to Section 327, the Examiner has selected and seeks to Employ Arthur Petropoulos of Hill View Partners, 220 South Main Street, Providence, RI, 20903 as Broker/Consultant to assist with the sale of the Debtor's Assets. The Examiner has selected Hill View Partners because of their experience in matters of this character.

4. In view of the variety and complexity of the matters involved, the Examiner seeks to employ Hill View Partners pursuant to a Consultancy Agreement that is attached hereto. The Consultancy Agreement provides for the following compensation:

a. A $10,000 monthly Consultancy Fee for the first two months, with a $5,000 monthly Consultancy Fee for each month thereafter.

b. An Advisory (Success) Fee of Five (5%) Percent of the Gross sales price of any sale of the Assets of the Debtor.

c. A Retainer of $10,000 to be applied towards the first month's services will be paid upon Court approval of this application.

5. The Debtor's Lease of premises at Patriot Place must be assumed by Mid-August 2024 so it is expected that any sale would be consummated in the near future.

6. The Retainer will be paid by funds in the Debtor in Possession account that is subject to a lien held by Hanscom Federal Credit Union. The Examiner has consulted with Counsel for Hanscom Federal Credit Union and they assent to the terms of the employment and payment of the Retainer from the Debtor in Possession account subject to their lien.

7. To the best of Debtor's knowledge Arthur Petropoulos is a disinterested person within the meaning of Section 101(14) of the Code, represents or holds no interest

adverse to the interest of the debtor or the estate with respect to matters on which he is to be employed, and represents no other entity in connection with this case.

8, All fees accrued for services rendered to the Examiner shall be subject to review and allowance by the Court on application pursuant to Section 330 and 331 of the Code and MLBR 20016-1 or through an order approving a sale of the Debtor's Assets.

Request for Expedited Determination

9. The Examiner is requesting expedited determination on the motion because the Debtor's lease of premises at Patriot Place must be assumed by mid-August 2024 so time is of the essence. It is in the best interest of the estate and its creditors to authorize the Broker's employment as soon as possible so he can start to work on marketing the Debtor's Assets. The Examiner is serving this motion electronically on the parties on the ECF list and will mail the motion to the 20 largest unsecured creditors. The Examiner requests that the Court set a deadline for objections of 4:30 p.m. on June 20, 2024 and that the Court allow the motion on Friday June 21, 2024 if there are no objections.

WHEREFORE, the Debtor prays that it be authorized to employ Arthur Petropoulos of Hill View Partners as Consultant/Broker for the Examiner as set forth herein.

Dated: June 14, 2024

CHAPTER 11 EXAMINER

/s/ John O. Desmond

John O. Desmond (BBO 554580)
5 Edgell Road, Suite 30A
Framingham, MA 01701
Tel: (508) 879-9638
Email: attorney@jdesmond.com

3

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In Re<br><br>FREEDOM WIND TUNNEL<br>    Debtor | Case No. 24-10082-CJP<br>Chapter 11 |

AFFIDAVIT OF BROKER IN SUPPORT OF EXAMINER'S
MOTION TO EMPLOY BROKER

Arthur Petropoulos, being duly sworn, deposes and says:

1. I am the founder and managing partner of Hill View Partners, 220 Main Street, Providence, RI 02903. I am the Consultant/Broker that the Examiner herein wishes to employ for the purposes set forth more fully in the application of the Examiner. I have worked as a consultant and business advisor with respect to sales of mid-size business for more than 10 years.

2. My connections with the Debtor, any creditor, or other party in interest, their respective attorneys and accountants are as follows:

> My firm represents a company with respect to selling the company's business. The company has also hired the law firm of Murphy & King to represent it in connection with the sale. Murphy & King represents Erland Construction which was the general contractor of the Debtor and a large creditor of the Debtor.

I am and each member of my firm is a "disinterested person" as that term is defined in 11 U.S.C. 101(14).

3. I have not agreed to share with any person (except members of my firm) the compensation to be paid for the services rendered in this case, except as follows: NONE.

4. I have received no retainer in this case. The Examiner proposes to pay a $10,000 retainer to my firm upon court approval of the employment. The retainer is to be paid from the Debtor in Possession account.

5. I shall amend this statement immediately upon my learning that (A) any of the within representation are incorrect or (B) there is any change of circumstances relating thereto.

6. I have reviewed the provisions of MLBR 2016-1.

I certify under the penalty of perjury that the foregoing is true and correct.

Dated: June 14, 2024

Arthur Petropoulos
Hill View Partners
220 South Main Street
Providence, RI 02903
Tel: (401) 569-9136
arthur@hillviewps.com



M&A, BUSINESS EXIT, AND CAPITAL ADVISORY SERVICES FOR THE MIDDLE MARKET

**CONSULTANCY AGREEMENT – FREEDOM WIND TUNNEL**

This Consultancy Agreement (the "Agreement") is made and entered into this June 14, 2024 (the "Effective Date") by and between Freedom Wind Tunnel LLC, with its principal place of business located at 21 Patriot Place, Foxboro, MA, 02035 (hereafter referred to as the "Company") and Hill View Partners LLC with its principal place of business located at 220 South Main Street, Providence, RI, 02903 (the "Consultant") (hereinafter referred to individually as a "Party" and collectively as "the Parties").

WHEREAS, the Company is developing with plans to operate an indoor skydiving experience oriented leisure and entertainment enterprise.

WHEREAS, the Consultant has expertise in the areas of providing advisory, financial, and strategic support and consulting services to firms such as the Company;

WHEREAS, the Company desires to engage the Consultant on an exclusive basis to provide certain services in the area of Consultant's expertise and the Consultant is willing to provide such services to the Company;

NOW, THEREFORE, the Parties hereby agree as follows:

**1.    Engagement and Services**

(a)    <u>Engagement</u>. The Company hereby engages the Consultant to provide and perform the services set forth below (the "Services"), and the Consultant hereby accepts the engagement.

(b)    <u>Services:</u> Transaction advisory, support, and diligence, capital and/or counterparty introductions, and/or other broader M&A, corporate development, general and strategic consulting services, and other such services as may be necessary and requested to assist the Company in effectuating its business activities and objectives. More specifically, Company is seeking to explore, procure, structure, negotiate, and execute a strategic transaction relevant to the assets, operations, and intellectual property of the business, namely the expedient sale or refinancing of the existing capitalization.

(c)    <u>Standard of Services</u>. All Services to be provided by Consultant shall be performed with reasonable promptness and diligence in a workmanlike manner. The Company shall provide such access to its information, property and personnel as may be reasonably required in order to permit the Consultant to perform the Services.

(d)    <u>Tools, Instruments and Equipment</u>. Consultant shall provide Consultant's own tools, instruments and equipment and place of performing the Services, unless otherwise agreed between the Parties.



**2.    Consultancy Period and Exclusivity**

(a)    Commencement. This Agreement shall commence on the Effective Date and shall remain in effect until the termination of this Agreement as provided in Article 2(b) (the "Consultancy Period").

(b)    Termination. This Agreement may be terminated by the Company or the Consultant, without cause, by providing five (5) days written notice of such termination, to which electronic communications shall suffice as written notice.

(c)    Exclusivity. Company represents and warrants that it will not, during the course of the engagement contemplated in this Agreement, seek services or enter into any other arrangements similar or the same as those provided by Consultant or which are and is contemplated herein. Moreover, the Company agrees that it shall not indirectly accomplish that which it is not permitted to accomplish directly under this Agreement.

**3.    Consultancy Fee and Expenses**

(a)    Fees and Compensation. In consideration of the Services to be rendered hereunder, the Company shall pay Consultant a Consultancy Fee at the rates, payable at the time, and pursuant to the procedures and contingencies set forth below (the "Consultancy Fee"), which shall be comprised of the Monthly Fee, Initial Retainer, and Advisory Fees.

(b)    Monthly Fee. Consultant shall be compensated on a Monthly basis, paid in arrears according to Section 3(f) below, in the amount of Ten Thousand ($10,000.00) dollars for each of the first and second months, and Five Thousand ($5,000.00) dollars for each month thereafter. The Monthly Fee will accrue daily and be invoiced at the end of each respective month.

(c)    Initial Retainer. Company shall provide Consultant with an Initial Retainer of Ten Thousand ($10,000.00) dollars, which shall be applied towards the first month's services.

(d)    Advisory Fees. Advisory Fees shall be earned and paid to the Consultant in the following scenarios:

   i.)    **Strategic Transactions:** To the extent that the Company is acquired, or otherwise sells a portion or percentage of its ownership through any introduction, relationships, or otherwise either made by Consultant or which otherwise arises or occurs during Consultant's engagement or during the Tail period indicated below, Consultant shall earn a fee calculated by multiplying Five Percent (5.00%) by the Gross Amount of the transaction for any transactions consummated. The Gross Amount of a transaction shall mean the total value of all cash, securities, or other property received, including any contingent, earn-out, or indebtedness assumed in connection with a transaction. To the extent that a portion of the Gross Amount is not determinable at closing due to earn-outs or similar future payments, the Advisory Fee shall be applied to an initial closing and/or funding and each subsequent closing and/or funding.

(e)    "Tail": To the extent the Agreement is terminated by Company or Consultant and any party with which there was any communication during the engagement ultimately undertakes an acquisition, investment, strategic transaction, loan, capital infusion, or any other type of transaction or financing as contemplated herein within twenty-four (24) months of the Termination Date, Company will be required to



compensate Consultant in accordance with the terms and timelines contained in the Agreement as if it were still in full force and effect.

(f)     <u>Invoicing and Payment</u>. All Consultancy Fees shall be due and payable within thirty (30) calendar days of invoicing or, in the event of fees owed prior to a termination, within thirty (30) calendar days of termination. For the avoidance of doubt, all Monthly Fees accrued prior to Termination shall be paid within the above timeframe and Termination shall not reduce or negate any such fees for Services rendered. All Advisory Fees, as defined in Section 3(d) herein, shall be paid via wire transfer at the same time and as part of the respective transaction and/or capital event closing, funding, or other completion of any sort, and shall be incorporated on the funds flow statement and/or settlement statement for the respective event. Furthermore, Company shall not consummate and/or execute any transaction or documentation of any transaction contemplated herein without Consultant's appropriate and agreed upon inclusion in the Purchase and Sale, Loan, or other Agreement or similar memorialization, contract, or other documentation and/or agreement between Company and any respective counterparty.

(g)     <u>Expenses</u>. Consultant shall be entitled to reimbursement for all pre-approved expenses reasonably incurred in the performance of the Services, upon submission and prior approval of written statements and receipts in accordance with the then regular procedures of the Company.

**4.     Independent Contractor and Provision of Information**

Company and Consultant agree that all Services will be rendered as an independent contractor and that this Agreement does not create an employer-employee or agency relationship between the Consultant and the Company. The Consultant shall have no right to receive any employee benefits provided by the Company to its employees.

The Company shall furnish Consultant with such information and other materials and documents as Consultant may reasonably request. It is agreed that Consultant may rely on information, assumptions, and conclusions of the Company and the Company's officers, directors, owners, accountants, counsel, and other agents and advisors set forth in the documents furnished by the Company and that Consultant does not assume the responsibility for the accuracy, completeness, or validity thereof. All information provided to Consultant by or on behalf of the Company will be accurate and complete to the best of Company's knowledge and understanding. Company will further promptly notify Consultant of any material inaccuracies, changes, or omissions relative to any such information if and as such items should arise while Company and Consultant are pursuing the objectives outlined herein.

**5.     Non-Publicity**

Each of Company and Consultant agree not to disclose the contents of this Agreement to any third party without the prior written consent of the other Party except: (i) to its advisors, attorneys or auditors who have a need to know such information, (ii) as required by law or court order, (iii) as required in connection with the reorganization of a Party, or its merger into any other corporation, or the sale by a Party of all or substantially all of its properties or assets, (iv) as may be required in connection with the enforcement of this Agreement, or (v) as part of Consultant providing the Services contemplated herein to Company.



**6.    Governing Law and Dispute Resolution**

This Agreement shall be governed by and construed in accordance with the laws of Rhode Island, without giving effect to any choice of law or conflict of law provisions.

**7.    General**

This Agreement constitutes the entire agreement of the Parties on the subject hereof and supersedes all prior understandings and instruments on such subject. This Agreement may not be modified other than by a written instrument executed by duly authorized representatives of the Parties. No waiver of any provision of this Agreement shall constitute a waiver of any other provision(s) or of the same provision on another occasion. Failure of either Party to enforce any provision of this Agreement shall not constitute a waiver of such provision or any other provision(s) of this Agreement.

Should any provision of this Agreement be held by a court of competent jurisdiction to be illegal, invalid or unenforceable, such provision may be modified by such court in compliance with the law giving effect to the intent of the Parties and enforced as modified. All other terms and conditions of this Agreement shall remain in full force and effect and shall be construed in accordance with the modified provision. This Agreement may be executed in counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

Nothing contained in this Agreement shall require the Company to accept the terms of any Transaction, Loan, Merger, Acquisition, or otherwise, and the Company has the right in its sole and absolute discretion to reject any such proposal, offer, or other such opportunity.

Both parties represent that the person executing this Agreement on their behalf is duly authorized to sign on behalf of and legally bind the respective party, and all of their affiliates, nominees and agents, and that this is a legally binding obligation, enforceable in accordance with its terms.

**8.    Indemnification and Limitation of Liability**

The Company shall indemnify Consultant and hold it harmless against any and all losses, claims, damages or liabilities to which Consultant may become subject arising out of any actions, statements, or decisions made by the Company and shall reimburse Consultant promptly for any legal or other expenses reasonably incurred by it in connection with investigating, preparing to defend or defending, or providing evidence in or preparing to serve or serving as a witness with respect to, any lawsuits, investigations, claims or other proceedings. The Company further agrees that, without Consultant's prior written consent, it will not enter into any settlement of a lawsuit, claim or other proceeding as illustrated above unless such settlement includes an explicit and unconditional release from the party bringing such lawsuit, claim or other proceeding of Consultant. Liability arising from Consultant's professional services, errors or omissions shall not exceed the lesser of a.) $10,000.00, or b.) the total fees paid and received for services rendered pursuant to this Agreement.

**9.    Survival of Provisions and Other Considerations**

The following provision of this Agreement shall survive the termination of this Agreement: Articles 3, 7, 8, 9, and all other provisions of this Agreement that by their nature extend beyond the termination of this Agreement.



IN WITNESS WHEREOF, both Parties state that the foregoing correctly sets forth the understanding of the Agreement and, intending to be legally bound, the Parties have duly executed this Agreement by their authorized representatives as of the date first written above.

Signed for and on behalf of:

**Freedom Wind Tunnel LLC**

Subject to Bankruptcy Court Approval

By: *(signature)* 6/14/24

Name: John O. Desmond
Title: Authorized Signatory
Chapter 11 Examiner

Signed for and on behalf of:

**Hill View Partners, LLC**

By: *(signature)*

Name: Arthur Petropoulos
Title: Managing Partner
June 14, 2024