UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

_____
                                       )
IN RE:                                 )
                                       )      CHAPTER 11
FREEDOM WIND TUNNEL, LLC               )      CASE NO. 24-10082-CJP
                                       )
          DEBTOR                       )
                                       )
_____)

### EXAMINER'S RESPONSE TO NPP DEVELOPMENT LLC'S OBJECTION TO MOTION TO ASSUME LEASE

John O. Desmond, the duly-appointed examiner in this chapter 11 case

("Examiner"), respectfully responds to the objection filed by NPP Development, LLC

("NPP") to the Examiner and Freedom Wind Tunnel, LLC's ("Debtor") *Joint Motion to*

*Assume Lease* [ECF No. 183].  After receiving an offer to purchase the Debtor's assets,

including the Debtor's lease with NPP, the Examiner and the Debtor filed a joint motion

to assume the lease so that it can be assigned as part of a sale of the Debtor's assets.  NPP

has objected.  The main thrust of NPP's objection is that the Debtor cannot assume the

lease because at the time of the filing of the motion the Debtor "failed to complete the

project", Obj. p.12, A(i), and because it has not shown that it can remove the Erland Lien

from the leased premises.  In addition, NPP vaguely suggests that there may be other

defaults under the lease and complains that the joint motion to assume the lease was

deficient.

NPP's objections should be overruled.  First, as described in more detail below,

NPP has waived its right to object to the lease assumption based on the Debtor's failure

to complete the project.  Second, even if not waived, NPP ignores the fact that the Debtor

and NPP had agreed to set a new date for completion, but instead NPP wrongfully sought

1

to terminate the lease.  Third, the Examiner's stalking horse bidder, The Wind Tunnel

Company, LLC, has the ability to cure all monetary defaults under the lease and to

provide adequate assurance of future performance.  Indeed, the offer explicitly states that

The Wind Tunnel Company will bond-off the Erland Lien.  A copy of the offer was

provided to NPP on August 13, 2024.  Fourth, the Debtor is not in default under any other

provision of the lease and finally, the joint motion to assume the lease was adequate

under the circumstances of this case.

> **I.      The Debtor's failure to complete the project is not a bar to
>           assumption of the lease under the facts of this case.**
>
> > ***a.   NPP has waived its right to argue that the lease cannot be assumed
> >        as a matter of law because the project is incomplete.***

In its objection, NPP asserts for the first time that as a matter of law, the Debtor

"cannot assume the Lease because it did not complete the Project at the time of the

August 13, 2024 assumption deadline."  Obj. at p. 13.  NPP argues that in order to

assume the lease, the Debtor was required to have cured all nonmonetary defaults at the

time of the assumption, including to have completed construction.  Even if NPP is

correct, it has raised this issue too late.

NPP knew at the time of the appointment of an examiner that the Debtor would

not be able to complete construction of the project.  Indeed, the explicit purpose of

appointing an examiner in this case was to facilitate a sale of the Debtor's assets,

including the NPP lease, *because* the Debtor would not be able to complete the project

itself.  Erland's motion to appoint a trustee [ECF No. 99], which precipitated the

appointment of the Examiner, identifies the deadline to assume the lease as the primary

reason why a sale process was needed – if the deadline to assume the lease passed

2

without a sale in prospect, there would be no chance of the project being completed.  *See,*

*Motion to Appoint Chapter 11 Trustee* at pp. 1-2 ("If the Debtor does not assume the

Lease, the Debtor will be left with no material assets and no prospect to re-pay

creditors…. Given the deadlines in section 365(d)(4) of the Bankruptcy Code, the fact

that the Debtor has not obtained debtor-in-possession financing, the time needed to

complete the Facility, and the amount owed to the Debtor's creditors, a plan of

reorganization is not a viable prospect in this case. A sale of the Debtor's assets is

therefore required in order to maximize the value of those assets and provide for the

payment of creditors.").  Furthermore, the order appointing an examiner, *which was*

*agreed to in substance by NPP,* explicitly contemplates a sale of the Debtor's assets,

including the lease.  *See, Order Appointing Examiner* [ECF No. 138] and *Proposed*

*Order Appointing Examiner* [ECF No. 134].

While the order appointing the examiner includes a provision that NPP reserves

its rights regarding the assumption and assignment of the lease, such a reservation of

rights cannot mean that NPP can stand idly by and allow the estate to incur the significant

administrative costs of the Examiner, his counsel, and the broker spending over three

months marketing the Debtor's assets, obtaining a stalking horse bid, moving to assume

the lease, and negotiating an APA before revealing its heretofore undisclosed position

that assuming and assigning the lease is and has been impossible *as a matter of law*.  To

allow NPP to do so would decimate the Debtor's bankruptcy estate.  The estate is likely

approaching administrative insolvency and with no possibility of a sale, creditors will get

nothing.

By not raising this issue earlier, NPP has waived its right to assert it now.

3

Alternatively, NPP should be estopped from asserting this position because it knew that <u>all</u> other parties in the case were acting in reliance on the reasonable belief, uncontroverted by NPP, that the assumption and assignment of the Debtor's lease in conjunction with a sale of the Debtor's assets to someone who would complete the project was at least theoretically possible.

### b. NPP and the Debtor agreed to negotiate a new completion date and instead NPP wrongly tried to terminate the lease.

Even if NPP is allowed to argue that all nonmonetary defaults were required to be cured as of the time of assumption of the lease, the Debtor has defenses to the completion deadline asserted by NPP.

As NPP noted in its objection, NPP issued a notice of termination on August 1, 2023 based on the Debtor's failure to complete the project. On information and belief, of particular concern to NPP was the fact that the exterior of the building was not complete and would not be complete by the start of the Patriot's 2023 -2024 season.

Based on the Examiner's understanding of the facts, at that time the Debtor was dissatisfied with the quality and timeliness of Erland's work and did not want Erland to continue working on the project. However, NPP was adamant that the exterior of the building had to be completed before September 9, 2023. NPP approached the Debtor and offered to rescind its termination notice and negotiate with the Debtor in good faith to set a new completion date in consideration for the Debtor authorizing Erland to take the steps necessary to complete the exterior of the building before September 9, 2023. Contrary to NPP's assertions, the agreement did not require the Debtor to provide a "date certain" but rather required the parties to negotiate in good faith. *See*, *Rescission of Termination Notice dated August 4, 2023*, para. 3, attached as Exhibit 1.

4

The agreement memorialized in the *Rescission of Termination* supersedes the lease. However, thereafter the parties never established a non-contingent completion date binding on the Debtor.[1]  Consequently, despite NPP's later termination notices, at the time of the case filing there was no legally enforceable completion date under the lease and therefore, the Debtor is not in default. It follows that the Debtor's failure to complete the project is no impediment to the assumption of the lease.

II.     **The offer from The Wind Tunnel Company provides adequate assurance that the monetary default under the lease will be promptly cured.**

NPP also argues that the Debtor has not provided adequate assurance that the monetary default under the lease will be promptly cured. The only monetary default under the lease is the existence of the Erland Lien on the project. The offer of The Wind Tunnel Company explicitly states that it will bond-off the Erland Lien as part of its consideration for the Debtor's assets, including the lease. This offer was provided to NPP prior to the filing of the motion to assume the lease.

As discussed below and in the *Affidavit of Gordon M. Roberts, III,* attached hereto as Exhibit 2, Gordon Roberts, the principal of The Wind Tunnel Company, is also a board member of the Debtor and owns a 17.6% interest in the Debtor. *See Statement of Financial Affairs* [ECF No. 57], p. 26. Mr. Roberts has already invested over $1 million in the Debtor and has a vested interest in seeing this project through to completion. His past investments in the Debtor demonstrate his financial ability to cure the default and the offer demonstrates his intention to cure the default. That alone can constitute adequate assurance of a prompt cure.

---

[1] The Debtor had provided a date of completion provided Hanscom advanced funding by a certain date but that funding was never obtained.

**III.   The Wind Tunnel Company and its principal Gordon M. Roberts, III, can satisfy substantially all of the Safety Qualifications and provide adequate assurance of future performance.**

NPP expresses concern that The Wind Tunnel Company does not satisfy the Safety Qualifications in the lease and has not provided adequate assurance of future performance.  Assuming (without conceding) that the Safety Qualification are conditions to the assignment of the lease that are enforceable in bankruptcy, The Wind Tunnel Company satisfies them.  *See*, *Affidavit of Gordon M. Roberts, III in Support to Motion to Assume Lease* filed herewith.  Likewise, Mr. Roberts' financial ability to continue to perform under the lease is evident from his current and past business ventures, his financial condition, and the fact that with Roberts' involvement the Debtor has continued to pay rent and otherwise perform under the lease.

**IV.   NPP's other objections to the assumption of the lease are without merit.**

NPP also argues that there may be other defaults under the lease, specifically, that the Debtor may not have the requisite insurance and that changes to the design of the wind tunnel may have necessitated an update to the freedom to operate opinion required under the lease.  However, the Debtor is in compliance with these conditions.

First, based on representations made by the Debtor and the fact that the US Trustee's office has not moved to dismiss or convert the case, the Examiner believes that the Debtor has the required insurance and did so prior to and on August 13, 2024.  *See* evidence of insurance attached as Exhibit 2.

Second, the Debtor has represented to the Examiner that there have been no changes in the design of the wind tunnel since the freedom to operate opinion was obtained, so the requirement to update to the freedom to operate opinion has not been

triggered.  This is not a default under the lease.

In addition, NPP argues that the *Joint Motion to Assume Lease* must fail because it did not provide NPP with enough information about the lease assumption.  However, while the motion was concise, given the facts of this case, it was nevertheless effective. At the time of the filing of the motion, the Examiner had already sent NPP a copy of the offer from The Wind Tunnel Company, so NPP's assertion that the purchaser/assignee was "undisclosed" or that NPP "lacks *any* information" about the assignee is inaccurate. Furthermore, the Examiner believes that NPP was aware of Mr. Roberts' connection to the Debtor prior to and at the time of the lease assumption.  In any case, relevant information about Mr. Roberts was available in the Debtor's schedules.

The Examiner was appointed in late May to sell the Debtor's assets, including its lease, by August 13th.  It was known from the time of the Examiner's appointment that his primary charge was to sell the Debtor's assets, including the lease, to an entity that would complete construction on the project and get the wind tunnel operational.  The Examiner, however, is not the party empowered to assume and assign a lease.  Given this split of responsibility and the compressed timeframe in which the Examiner had to perform his duties, plus the information already available to NPP, the motion to assume the lease was adequate.  Furthermore, the motion has been supplemented with this response and Mr. Roberts' affidavit, and provides additional information to NPP.

## Conclusion

NPP's objection to the Debtor's assumption of the lease should be overruled. NPP cannot, at this late stage, object to the Debtor's assumption of the lease on the grounds that it has not completed the project and NPP's other arguments must fail.  The

Wind Tunnel Company has provided adequate assurance of promptly addressing the Erland Lien and Mr. Roberts' past dealings with the Debtor, as evidenced on the docket and, on information and belief, previously known to NPP, demonstrate his ability to perform under the lease in the future.  His affidavit filed herewith underscores that evidence and confirms that he and The Wind Tunnel Company can substantially satisfy the Safety Qualifications under the lease and perform under the lease in the future.  There are no other defaults under the lease and the Debtor and Examiner's motion to assume the lease was sufficient.

For these reasons, the Examiner respectfully requests this Court overrule NPP's objection, affirm its order allowing the Debtor's assumption of the lease for purposes of assigning it in the context of a sale of the Debtor's assets, and grant such further relief as is deemed just.

Respectfully submitted,
**John O. Desmond, Examiner of Freedom Wind Tunnel LLC**
By his counsel,

/s/ Kate E. Nicholson
Kate E. Nicholson (BBO# 674842)
Nicholson Devine LLC
21 Bishop Allen Dr.
Cambridge, MA 02139
(857) 600-0508
Dated: September 5, 2024        kate@nicholsondevine.com

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

```
                                    )
IN RE:                              )
                                    )     CHAPTER 11
FREEDOM WIND TUNNEL, LLC            )     CASE NO. 24-10082-CJP
                                    )
            DEBTOR                  )
                                    )
```

### CERTIFICATE OF SERVICE

I, Kate E. Nicholson, certify that I have sent a copy of this **Response to NPP Development LLC's Objection to Joint Motion to Assume Lease** via first-class mail, postage prepaid, to the parties on the attached list who do not receive electronic notice via ECF.

/s/ Kate E. Nicholson
Kate E. Nicholson (BBO# 674842)
Nicholson Devine LLC
21 Bishop Allen Dr.
Cambridge, MA 02139
(857) 600-0508
Dated: September 5, 2024          kate@nicholsondevine.com

**Electronic Mail Notice List**

The following is the list of <u>parties and attorneys</u> who are currently on the list to receive email notice/service for this case.

- William J Amann    wamann@amburlaw.com, cshaw@amburlaw.com
- Paul W. Carey    pcarey@mirickoconnell.com, bankrupt@mirickoconnell.com
- John O. Desmond    attorney@jdesmond.com, desmondjr96990@notify.bestcase.com
- Jennifer V. Doran    jdoran@haslaw.com, calirm@hinckleyallen.com;kabarrett@hinckleyallen.com
- Richard N. Gottlieb    rnglaw@verizon.net, r39800@notify.bestcase.com
- Lee Harrington    lh@ascendantlawgroup.com
- Donald Ethan Jeffery    ejeffery@murphyking.com, dkonusevska@murphyking.com
- Justin Kesselman    justin.a.kesselman@usdoj.gov
- Richard King - B    USTPRegion01.BO.ECF@USDOJ.GOV
- James S. LaMontagne    jlamontagne@sheehan.com, nhbankruptcycourt@sheehan.com;asrimouksavanh@sheehan.com;kstavaski@sheehan.com
- Kate E. Nicholson    kate@nicholsondevine.com, knicholson@ecf.courtdrive.com;admin@nicholsondevine.com;april@nicholsondevine.com
- Bryan Thomas Noonan    bnoonan@schlossbergllc.com
- Jesse I. Redlener    jredlener@ascendantlawgroup.com, redlener.jesseb112050@notify.bestcase.com
- Steven C. Reingold    steven.reingold@saul.com, shaquille.williams@saul.com
- Laurence K. Richmond    lrichmond@richmondslaw.com
- Adam J. Ruttenberg    aruttenberg@beaconlawgroup.com
- Heather Sprague    Heather.Sprague@usdoj.gov
- Gary M. Weiner    GWeiner@Weinerlegal.com, mshapiro@weinerlegal.com;mstearns@weinerlegal.com

**Manual Notice List**

None.

# EXHIBIT 1



As of August 4, 2023

<u>**Via Email and Federal Express**</u>
Freedom Wind Tunnel LLC
200 Reservoir Street
North Attleboro, MA 02760
Attn: Neal Gouck, Manager
Email: nealgouck@freedomwindtunnel.com

RE:      **Rescission of Termination Notice**

Dear Mr. Gouck:

On July 2, 2019, NPP Development LLC ("Landlord"), and Freedom Wind Tunnel LLC ("Tenant"), entered into that certain Ground Lease, Covenant and Agreement (as amended, extended, modified and in effect on the date hereof, the "Ground Lease"), covering certain demised premises located at Patriot Place. Capitalized terms used herein without definition shall have the meanings assigned to them in the Ground Lease.

On August 1, 2023, Landlord sent formal notice (the "Termination Notice") to Tenant that the Ground Lease was terminated effective August 1, 2023, unless Tenant completes the Tenant's Work and opens the Demised Premises for business to the public for the Permitted Use by August 31, 2023 (the "Termination Effective Date").

Tenant has recently made certain representations to Landlord regarding its financial status and plans for additional fundraising, and regarding completion of the exterior construction of the Demised Premises to standards and specifications satisfactory to Landlord by September 9, 2023.  The parties agree to negotiate in good faith a revised date for the completion of Tenant's Work.

Based upon the foregoing, Landlord hereby rescinds the Termination Notice, effective August 4, 2023, provided that if Landlord determines in its sole discretion that the exterior construction of the Demised Premises will not be completed by September 9, 2023 to the standards and specifications satisfactory to Landlord, then Landlord reserves the right to reissue the Termination Notice (the "New Termination Notice") with the same Termination Effective Date.

Furthermore, if Landlord determines in its sole discretion that the exterior construction of the Demised Premises will not be completed by September 9, 2023 to the standards and specifications satisfactory to Landlord, then, provided that Landlord has not terminated the Ground Lease, Tenant and Hanscom Federal Credit Union ("Mortgagee") grant Landlord the right to complete the exterior construction and Landlord shall be entitled to a mechanics lien on the Demised Premises for any costs or expenses incurred by Landlord in connection with such work.

The provisions contained in this Rescission of Termination Notice in no way affect, limit, or constitute a waiver of any rights or remedies of Landlord, Tenant, or any third party under the Ground Lease including, without limitation, any rights of Tenant or Mortgagee under Article 13 thereof or in any way alter or modify any of the terms, conditions, or provisions of the Ground Lease. Furthermore, this Rescission of Termination Notice is not a waiver of, or with prejudice to, any and all claims which have been or may be asserted under the Ground Lease. Landlord and

Tenant and Mortgagee retain any and all rights under contract, law, or equity, to maintain and prosecute previously asserted, as well as unasserted, claims.

If you agree to the foregoing, please sign and return a counterpart of this Rescission of Termination Notice to Landlord.

Sincerely,

NPP DEVELOPMENT LLC

By: _____
Robyn Glaser
Authorized Agent

Agreed and Accepted by:

FREEDOM WIND TUNNEL LLC

By: _____
Name: _Neal Gouch_
Title: _CEO Freedom Wind_

HANSCOM FEDERAL CREDIT UNION

By: _____
Name: _____
Title: _____

# EXHIBIT 2

FREEWIN-01   KMCCUEAN

# ACORD® CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY)
7/8/2024

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.  THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT:   If  the  certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If  SUBROGATION  IS  WAIVED,  subject  to  the  terms and conditions of the policy, certain policies may require an endorsement.  A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | | CONTACT NAME: | | |
|---|---|---|---|---|
| World Insurance Associates, LLC<br>50 Prospect St<br>Waltham, MA 02453 | | PHONE (A/C, No, Ext): (781) 642-9000 | | FAX (A/C, No): |
| | | E-MAIL ADDRESS: | | |
| | | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| | | INSURER A : Cincinnati Specialty Underwriters Ins Co | | 13037 |
| INSURED | | INSURER B : Cincinnati Insurance Company | | 10677 |
| Freedom Wind Tunnel LLC<br>Mr. Neal Gouck<br>200 Reservoir Street<br>North Attleboro, MA 02760 | | INSURER C : Liberty Mutual Fire Insurance Company | | 23035 |
| | | INSURER D : | | |
| | | INSURER E : | | |
| | | INSURER F : | | |

## COVERAGES        CERTIFICATE NUMBER:                                         REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED.  NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | X COMMERCIAL GENERAL LIABILITY | | | ▮▮▮▮▮ | 7/1/2024 | 7/1/2025 | EACH OCCURRENCE | $ 1,000,000 |
| | ☐ CLAIMS-MADE  X OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | OTHER: | | | | | | | $ |
| B | AUTOMOBILE LIABILITY | | | ▮▮▮▮▮ | 7/1/2024 | 7/1/2025 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY  ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | X HIRED AUTOS ONLY  X NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| A | X UMBRELLA LIAB  X OCCUR | | | ▮▮▮▮▮ | 7/1/2024 | 7/1/2025 | EACH OCCURRENCE | $ 1,000,000 |
| | ☐ EXCESS LIAB  ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ 1,000,000 |
| | ☐ DED  ☐ RETENTION $ | | | | | | | $ |
| C | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY      Y/N | | | ▮▮▮▮▮ | 4/14/2024 | 4/14/2025 | X PER STATUTE  ☐ OTHER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? N (Mandatory in NH) | N/A | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES  (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
All Premiums are paid in full.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Evidence of Insurance | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE  EXPIRATION  DATE  THEREOF,  NOTICE  WILL  BE  DELIVERED  IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE<br>*Christopher R. Clark* |

ACORD 25 (2016/03)

© 1988-2015 ACORD CORPORATION.  All rights reserved.
The ACORD name and logo are registered marks of ACORD

**ACORD®**

FREEWIN-01          KMCCUEAN

# CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY)**
7/8/2024

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | | CONTACT NAME: | | |
|---|---|---|---|---|
| World Insurance Associates, LLC<br>50 Prospect St<br>Waltham, MA 02453 | | PHONE (A/C, No, Ext): (781) 642-9000 | | FAX (A/C, No): |
| | | E-MAIL ADDRESS: | | |
| | | **INSURER(S) AFFORDING COVERAGE** | | NAIC # |
| | | INSURER A : Cincinnati Specialty Underwriters Ins Co | | 13037 |
| INSURED | | INSURER B : Cincinnati Insurance Company | | 10677 |
| Freedom Wind Tunnel LLC<br>Mr. Neal Gouck<br>200 Reservoir Street<br>North Attleboro, MA 02760 | | INSURER C : Liberty Mutual Fire Insurance Company | | 23035 |
| | | INSURER D : National Casualty Company | | 11991 |
| | | INSURER E : Endurance American Specialty Insurance Company | | 41718 |
| | | INSURER F : | | |

## COVERAGES     CERTIFICATE NUMBER:     REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | X COMMERCIAL GENERAL LIABILITY | | | ▓▓▓▓▓ | 7/1/2024 | 7/1/2025 | EACH OCCURRENCE | $ 1,000,000 |
| | ☐ CLAIMS-MADE X OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | ☐ OTHER: | | | | | | | $ |
| B | AUTOMOBILE LIABILITY | | | ▓▓▓▓▓ | 7/1/2024 | 7/1/2025 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | X HIRED AUTOS ONLY X NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| A | X UMBRELLA LIAB X OCCUR | | | ▓▓▓▓▓ | 7/1/2024 | 7/1/2025 | EACH OCCURRENCE | $ 1,000,000 |
| | ☐ EXCESS LIAB ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ 1,000,000 |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| C | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY | | | ▓▓▓▓▓ | 4/14/2024 | 4/14/2025 | X PER STATUTE ☐ OTHER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) Y/N N N/A | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |
| D | Directors & Officers | | | ▓▓▓▓▓ | 2/23/2024 | 2/23/2025 | D&O | 1,000,000 |
| E | Property | | | ▓▓▓▓▓ | 11/30/2023 | 11/30/2024 | Property | 29,600,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
All Premiums are paid in full.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Evidence of Insurance | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE<br>*Christopher R. Clark* |

**ACORD 25 (2016/03)**

© 1988-2015 ACORD CORPORATION. All rights reserved.
The ACORD name and logo are registered marks of ACORD

FREEWIN-01                    KMCCUEAN

**ACORD**

# CERTIFICATE OF LIABILITY INSURANCE

| DATE (MM/DD/YYYY) |
|---|
| 7/8/2024 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.  THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT:   If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement.  A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | | |
|---|---|---|---|
| World Insurance Associates, LLC 50 Prospect St Waltham, MA 02453 | PHONE (A/C, No, Ext): (781) 642-9000 | | FAX (A/C, No): |
| | E-MAIL ADDRESS: | | |
| | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| | INSURER A : Cincinnati Specialty Underwriters Ins Co | | 13037 |
| INSURED          Freedom Wind Tunnel LLC Mr. Neal Gouck 200 Reservoir Street North Attleboro, MA 02760 | INSURER B : Cincinnati Insurance Company | | 10677 |
| | INSURER C : Liberty Mutual Fire Insurance Company | | 23035 |
| | INSURER D : | | |
| | INSURER E : | | |
| | INSURER F : | | |

## COVERAGES                    CERTIFICATE NUMBER:                    REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED.  NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| **A** | X   **COMMERCIAL GENERAL LIABILITY** | X | | ▉ | 7/1/2024 | 7/1/2025 | EACH OCCURRENCE | $ 1,000,000 |
| | ☐ CLAIMS-MADE   X OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | OTHER: | | | | | | | $ |
| **B** | **AUTOMOBILE LIABILITY** | | | ▉ | 7/1/2024 | 7/1/2025 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | X HIRED AUTOS ONLY X NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| **A** | X **UMBRELLA LIAB** X OCCUR | | | ▉ | 7/1/2024 | 7/1/2025 | EACH OCCURRENCE | $ 1,000,000 |
| | ☐ EXCESS LIAB ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ 1,000,000 |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| **C** | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY**  Y / N | | | ▉ | 4/14/2024 | 4/14/2025 | X PER STATUTE ☐ OTH-ER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH)  N | N/A | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES  (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
All Premiums are paid in full.

Hanscom Federal Credit Union ISAOA ATIMA c/o Octant Business Services is an additional insured with regard to the general liability as required by written contract.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Hanscom Federal Credit Union ISAOA ATIMA C/O Octant Business Services PO Box 1530 Littleton, MA 01460 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. AUTHORIZED REPRESENTATIVE  *Christopher R Clark* |

**ACORD 25 (2016/03)**          © 1988-2015 ACORD CORPORATION.  All rights reserved.

The ACORD name and logo are registered marks of ACORD

FREEWIN-01  KMCCUEAN

# ACORD®
## CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY)**
7/8/2024

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | | CONTACT NAME: | | |
|---|---|---|---|---|
| World Insurance Associates, LLC 50 Prospect St Waltham, MA 02453 | | PHONE (A/C, No, Ext): (781) 642-9000 | | FAX (A/C, No): |
| | | E-MAIL ADDRESS: | | |
| | | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| | | INSURER A : Cincinnati Insurance Company | | 10677 |
| INSURED | | INSURER B : Cincinnati Specialty Underwriters Ins Co | | 13037 |
| Freedom Wind Tunnel LLC Mr. Neal Gouck 200 Reservoir Street North Attleboro, MA 02760 | | INSURER C : | | |
| | | INSURER D : | | |
| | | INSURER E : | | |
| | | INSURER F : | | |

## COVERAGES        CERTIFICATE NUMBER:                                REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | COMMERCIAL GENERAL LIABILITY | | | | | | EACH OCCURRENCE | $ |
| | ☐ CLAIMS-MADE ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | ☐ OTHER: | | | | | | | $ |
| A | AUTOMOBILE LIABILITY | | | ▮▮▮▮▮ | 7/1/2024 | 7/1/2025 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | X HIRED AUTOS ONLY X NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| B | X UMBRELLA LIAB X OCCUR | | | ▮▮▮▮▮ | 7/1/2024 | 7/1/2025 | EACH OCCURRENCE | $ 1,000,000 |
| | ☐ EXCESS LIAB ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ 1,000,000 |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY | | | | | | ☐ PER STATUTE ☐ OTHER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) | Y/N N/A | | | | | E.L. EACH ACCIDENT | $ |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
All Premiums are paid in full.

The listed entities are included as additional insured in regards to the general liability where required by written contract.
see page 2

Certificate Holder Note:

SEE ATTACHED ACORD 101

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| NPP Development LLC c/o Leasing Services One Patriot Place Foxboro, MA 02035 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE *Christopher R Clark* |

ACORD 25 (2016/03)

© 1988-2015 ACORD CORPORATION. All rights reserved.
The ACORD name and logo are registered marks of ACORD



AGENCY CUSTOMER ID: FREEWIN-01
LOC #:   1

# ADDITIONAL REMARKS SCHEDULE

Page   1   of   1

| AGENCY | NAMED INSURED |
|---|---|
| **World Insurance Associates, LLC** | **Freedom Wind Tunnel LLC**<br>**Mr. Neal Gouck**<br>**200 Reservoir Street**<br>**North Attleboro, MA 02760** |

| POLICY NUMBER | | |
|---|---|---|
| **SEE PAGE 1** | | |

| CARRIER | NAIC CODE | |
|---|---|---|
| **SEE PAGE 1** | **SEE P 1** | EFFECTIVE DATE: **SEE PAGE 1** |

**ADDITIONAL REMARKS**

**THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,**

**FORM NUMBER:**  ACORD 25  **FORM TITLE:**  Certificate of Liability Insurance

**Description of Operations/Locations/Vehicles:**
**Additional Insured:**
**NPP Development LLC**
**Foxboro Realty Associates LLC**
**FRAL Corporation**
**FRX LLC**
**FXP LLC**
**FXPA LLC**
**IFP Enterprises LLC**
**KPLP Inc.**
**Kraft Enterprises LLC**
**Kraft Family Inc.**
**Kraft Group LLC**
**Kraft Holdings Trust**
**Kraft Patriots Inc.**
**Kraft Soccer LLC**
**Kraft Sports & Entertainment LLC**
**New England Patriots LLC**
**NPP Development Holdings LLC**

**Certificate Holder Note:**

**NPS LLC**
**TeamOps LLC**
**TKG LLC**
**VIPPP LLC**
**Town of Foxborough, MA**
**And their respective owners, members, partners,**
**shareholders, and affiliated persons, entities and all**
**employees and agents are included as Additional Insureds.**

© 2008 ACORD CORPORATION.  All rights reserved.
The ACORD name and logo are registered marks of ACORD

**ACORD®**

FREEWIN-01    KMCCUEAN

# CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY)
**7/8/2024**

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | | |
|---|---|---|---|
| World Insurance Associates, LLC<br>50 Prospect St<br>Waltham, MA 02453 | PHONE (A/C, No, Ext): (781) 642-9000 | | FAX (A/C, No): |
| | E-MAIL ADDRESS: | | |
| | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| | INSURER A : Cincinnati Insurance Company | | 10677 |
| INSURED | INSURER B : Cincinnati Specialty Underwriters Ins Co | | 13037 |
| Freedom Wind Tunnel LLC<br>Mr. Neal Gouck<br>200 Reservoir Street<br>North Attleboro, MA 02760 | INSURER C : | | |
| | INSURER D : | | |
| | INSURER E : | | |
| | INSURER F : | | |

## COVERAGES          CERTIFICATE NUMBER:                    REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | **COMMERCIAL GENERAL LIABILITY**<br>☐ CLAIMS-MADE ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER:<br>☐ POLICY ☐ PRO-JECT ☐ LOC<br>OTHER: | | | | | | GENERAL AGGREGATE | $ |
| | | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | | | | | | | | $ |
| A | **AUTOMOBILE LIABILITY**<br>☐ ANY AUTO<br>☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS<br>X HIRED AUTOS ONLY X NON-OWNED AUTOS ONLY | | | ▉▉▉▉ | 7/1/2024 | 7/1/2025 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| B | X **UMBRELLA LIAB** X OCCUR<br>☐ EXCESS LIAB ☐ CLAIMS-MADE | | | ▉▉▉▉ | 7/1/2024 | 7/1/2025 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | | | AGGREGATE | $ 1,000,000 |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY**<br>ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? Y/N<br>(Mandatory in NH)<br>If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | | | | ☐ PER STATUTE ☐ OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
All Premiums are paid in full.

The listed entities are included as additional insured in regards to the   general liability where required by written contract.          see page 2

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| NPP Development LLC C/O Leasing Services<br>One Patriot Place<br>Foxboro, MA 02035 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>AUTHORIZED REPRESENTATIVE<br>*Christopher R Clark* |

ACORD 25 (2016/03)                    © 1988-2015 ACORD CORPORATION. All rights reserved.

The ACORD name and logo are registered marks of ACORD

FREEWIN-01                KMCCUEAN

# ACORD® CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY)**
7/8/2024

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.  THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT:   If  the  certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If  SUBROGATION  IS  WAIVED,  subject  to  the  terms and conditions of the policy, certain policies may require an endorsement.  A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | | |
|---|---|---|---|
| World Insurance Associates, LLC<br>50 Prospect St<br>Waltham, MA 02453 | PHONE (A/C, No, Ext): (781) 642-9000 | | FAX (A/C, No): |
| | E-MAIL ADDRESS: | | |
| | **INSURER(S) AFFORDING COVERAGE** | | NAIC # |
| | INSURER A : **Cincinnati Specialty Underwriters Ins Co** | | 13037 |
| INSURED | INSURER B : **Cincinnati Insurance Company** | | 10677 |
| Freedom Wind Tunnel LLC<br>Mr. Neal Gouck<br>200 Reservoir Street<br>North Attleboro, MA 02760 | INSURER C : **Liberty Mutual Fire Insurance Company** | | 23035 |
| | INSURER D : | | |
| | INSURER E : | | |
| | INSURER F : | | |

## COVERAGES          CERTIFICATE NUMBER:                REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED.  NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | **COMMERCIAL GENERAL LIABILITY** X | | X | ▉▉▉▉▉ | 7/1/2024 | 7/1/2025 | EACH OCCURRENCE | $ 1,000,000 |
| | CLAIMS-MADE   X   OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | POLICY   PRO-JECT   LOC | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | OTHER: | | | | | | | $ |
| B | **AUTOMOBILE LIABILITY** | | | ▉▉▉▉▉ | 7/1/2024 | 7/1/2025 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | OWNED AUTOS ONLY   SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | X HIRED AUTOS ONLY   X NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| A | **UMBRELLA LIAB** X   X OCCUR | | | ▉▉▉▉▉ | 7/1/2024 | 7/1/2025 | EACH OCCURRENCE | $ 1,000,000 |
| | EXCESS LIAB   CLAIMS-MADE | | | | | | AGGREGATE | $ 1,000,000 |
| | DED   RETENTION $ | | | | | | | $ |
| C | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** | | | ▉▉▉▉▉ | 4/14/2024 | 4/14/2025 | X PER STATUTE   OTHER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) Y/N N | N/A | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES  (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
All Premiums are paid in full.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| <br>U.S. Trustee's Office | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE  EXPIRATION  DATE  THEREOF,  NOTICE  WILL  BE  DELIVERED  IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE<br>*Christopher R. Clark* |

ACORD 25 (2016/03)          © 1988-2015 ACORD CORPORATION.  All rights reserved.

The ACORD name and logo are registered marks of ACORD

**1262 AJG**
**UNIQUE MARKET**
**REFERENCE:** ████████████████



## RISK DETAILS

| | |
|---|---|
| **UNIQUE MARKET REFERENCE:** | ████████████████ |
| **TYPE:** | Intellectual Property Infringement Liability Insurance |
| **LONDON BROKER:** | Arthur J. Gallagher (UK) Limited T/A Alesco Delegated Authority<br>The Walbrook Building<br>25 Walbrook<br>London<br>EC4N 8AW |
| **INTEREST**: | Intellectual Property Infringement Liability Insurance, as more fully defined in the wording |
| **INSURED:** | Freedom Wind Tunnel LLC |
| **NAMED INSURED:** | Freedom Wind Tunnel LLC |
| **INSURED ADDRESS:** | 200 Reservoir St<br>North Attleboro, MA 02760<br>USA |
| **PERIOD:** | Effective from:   18th June 2024 |
| | To:             17th June 2025 |
| | Both days inclusive, Local Standard Time at the address of the Insured above. |
| **RETROACTIVE LIABILITY DATE:** | 18th June 2020 |

**COVER:**

A) Infringement Defence
**Representative Fees & Expenses** and **Liability** and **Loss Mitigation**                                                                                      Operative

B) Indemnified Party Defence
**Representative Fees & Expenses** and **Liability** and **Loss Mitigation**                                                                                      Operative

**LIMITS OF INDEMNITY:**

USD 500,000 in aggregate for all **Claims** during the **Policy Period**, subject to sub-limits of:

i)    USD 500,000 any one **Claim** for **Representative Fees & Expenses**
ii)   USD 500,000 any one **Claim** for **Liability**
iii)  Nil any one **Claim** for **Withdrawal Expenses**
iv)   USD 100,000 any one **Claim** for **Loss Mitigation**

Alesco Delegated Authority is a trading name of Arthur J. Gallagher (UK) Limited which is authorised and regulated by the Financial Conduct Authority. Registered Office: The Walbrook Building, 25 Walbrook, London EC4N 8AW. Registered in England and Wales. Company Number: 1193013. www.alescorms.com

| Broker Initial | L/U Initial |
|---|---|
| | |

**1262 AJG
UNIQUE MARKET
REFERENCE:** ███████████



| | |
|---|---|
| **SELF INSURED RETENTION:** | USD 50,000 any one Claim |
| **COINSURANCE** | 5% any one **Claim** in excess of the **Self Insured Retention** |
| **TERRITORIAL LIMITS** | Worldwide |
| **INSURED AGREEMENT** | All written agreements entered into by the **Insured** that require the **Insured** to indemnify the other Party(ies) in respect of infringement of third party intellectual property rights arising in respect of the **Insured Products** and/or **Insured Intellectual Property**. Individual declaration is not required. All written agreements entered into by the **Insured** that controls the disclosure or use of confidential or secret information disclosed to the **Insured** in respect of any **Insured Intellectual Property** or **Insured Products**, but solely in respect of such obligations of confidentiality. Individual declaration is not required. |
| **INSURED BUSINESS ACTIVITY:** | Not applicable |
| **INSURED INTELLECTUAL PROPERTY:** | All intellectual property rights owned by or exclusively licensed to the **Insured**. Individual declaration is not required. |
| **INSURED PRODUCTS:** | Freedom Indoor Skydiving Wind Tunnel |
| **GOVERNING LAW:** | This **Policy** and any dispute or controversy arising between the **Insured** and **Insurers**, shall be governed and construed in accordance with the laws of the State of New York (without reference to its conflict of laws principals) and shall be subject to the exclusive jurisdiction of the New York Courts, unless agreed otherwise by the **Insured** and **Insurers** and is stated in the **Declarations**. |
| **PREMIUM:** | USD 20,000.00 plus all taxes and fees in addition |
| **PAYMENT TERMS:** | **Premium Payment Warranty 90 days** (LSW 585) – (as attached). |
| **POLICY WORDING:** | TMK 2023- Intellectual Property Infringement Liability Insurance (as attached) |
| **ENDORSEMENTS:** | It is hereby understood and agreed that the following will apply:<br><br>1. Contracts (Rights of Third Parties) Act 1999 (as attached).<br>2. Trade Mark Condition Clause (as attached).<br>3. Domain Name Condition Clause (as attached).<br>4. **Non Practicing Entities** Assertion Management Endorsement (as attached).<br>5. It is hereon noted and agreed that notwithstanding any terms within any **Insured Agreement**, it is a condition precedent to **Insurers** liability hereunder that for any **Claim** arising in respect of an **Indemnified Party**, the **Insured** is to have, and to maintain, control of the defense of any **Action**, including selection of counsel and full rights of **Settlement**.<br>8. Restricted Territory Exclusion (as attached) |

Alesco Delegated Authority is a trading name of Arthur J. Gallagher (UK) Limited which is authorised and regulated by the Financial Conduct Authority. Registered Office: The Walbrook Building, 25 Walbrook, London EC4N 8AW. Registered in England and Wales. Company Number: 1193013. www.alescorms.com

| Broker Initial | L/U Initial |
|---|---|
| | |

**1262 AJG**
**UNIQUE MARKET**
**REFERENCE:** ███████████



| | |
|---|---|
| **ADDRESS OF SERVICES OF NOTICE:** | Enterprise Risk Division<br>Tokio Marine Kiln Syndicates Limited<br>20 Fenchurch Street<br>London EC3M 3BY<br>United Kingdom<br>Telephone: +44 20 7886 9000<br>E-Mail: IP.Underwriting@tokiomarinekiln.com |
| **ADDRESS FOR NOTICE OF MEDIATION AND SERVICE OF SUIT:** | Lloyd's America, Inc.<br>Attention: Legal Department<br>280 Park Avenue, East Tower, 25th Floor<br>New York, NY 10017 |
| **ADDRESS FOR NOTICE OF CLAIMS:** | Enterprise Risk Claims Manager<br>Tokio Marine Kiln Syndicates Limited.<br>20 Fenchurch Street<br>London EC3M 3BY<br>United Kingdom<br>Telephone: +44 20 7886 9000<br>E-Mail: IP.claims@tokiomarinekiln.com |
| **SUBJECTIVITIES:** | None other than those contained within the wording |
| **CONDITIONS PRECEDENTS:** | None other than those contained within the wording |
| **EXPRESS WARRANTIES:** | None other than those contained within the wording |
| **TAXES PAYABLE BY INSURED AND ADMINISTERED BY INSURERS:** | None |
| **RECORDING, TRANSMITTING & STORING INFORMATION:** | Where Arthur J Gallagher (UK) Ltd T/A Alesco Delegated Authority maintains risk and claim data/information/documents, Arthur J Gallagher (UK) Ltd T/A Alesco Delegated Authority may hold data/information/documents electronically. |
| **INSURER CONTRACT DOCUMENTATION:** | This document details the contract terms entered into by the Re(Insurers) and unless otherwise specified below, constitutes the contract document |
| | Any Endorsement attaching hereto shall form the evidence of the contract changes agreed. |
| | The (Re)insured and (Re)insurers agree all contract documentation shall be issued in English. |
| | Standard Clauses specified herein which state their applicable registration number(s) and are not fully detailed within this agreement are available from the London Broker on request. |

Alesco Delegated Authority is a trading name of Arthur J. Gallagher (UK) Limited which is authorised and regulated by the Financial Conduct Authority. Registered Office: The Walbrook Building, 25 Walbrook, London EC4N 8AW. Registered in England and Wales. Company Number: 1193013. www.alescorms.com

| Broker Initial | L/U Initial |
|---|---|
| | |

**1262 AJG
UNIQUE MARKET
REFERENCE:** ████████████



**INFORMATION:**

As seen and agreed by Underwriters including proposal form dated 6th May 2024 & 18th June 2024.

Alesco Delegated Authority is a trading name of Arthur J. Gallagher (UK) Limited which is
authorised and regulated by the Financial Conduct Authority. Registered Office: The Walbrook
Building, 25 Walbrook, London EC4N 8AW. Registered in England and Wales. Company
Number: 1193013. www.alescorms.com

| Broker Initial | L/U Initial |
|----------------|-------------|
|                |             |

1262 AJG
UNIQUE MARKET
REFERENCE: ███████████



## SECURITY DETAILS

**INSURERS LIABILITY:**   **LMA3333**

### (RE)INSURERS  LIABILITY  CLAUSE

(Re)insurer's liability  several not joint

The liability of a (re)insurer under this contract is several and not joint with other (re)insurers party to this contract. A (re)insurer is liable only for the proportion of liability it has underwritten.  A (re)insurer is not jointly liable for the proportion of liability underwritten by any other (re)insurer.  Nor is a (re)insurer otherwise responsible for any liability of any other (re)insurer that may underwrite this contract.

The proportion of liability  under this contract  underwritten  by a (re)insurer  (or, in the case of a Lloyd's syndicate, the total of the proportions  underwritten  by all the members of the syndicate  taken  together)  is shown  next to its stamp. This is subject always to the provision concerning "signing" below.

In the case of a Lloyd's syndicate, each member of the syndicate (rather than the syndicate itself) is a (re)insurer. Each  member has underwritten  a proportion  of the total shown for the syndicate  (that total  itself being  the total of the proportions underwritten  by all the members  of the syndicate  taken  together). The liability of each member of the syndicate is several and not joint with other members. A member is liable only for that member's proportion.  A member is not jointly liable for any other member's proportion. Nor is any member otherwise responsible for any liability of any other (re)insurer that may underwrite this contract. The business address of each member  is Lloyd's, One  Lime Street,  London  EC3M  7HA.  The identity of each member of a Lloyd's syndicate  and their  respective proportion may be obtained by writing to Market Services, Lloyd's,  at the above address.

Proportion of liability

Unless there is "signing" (see below), the proportion of liability under this contract underwritten  by each (re)insurer (or, in the case of a Lloyd's syndicate,  the total of the proportions underwritten  by all the members of the syndicate taken together) is shown next to its stamp and is referred to as its "written  line".

Where  this contract  permits,  written  lines, or certain  written  lines,  may be adjusted  ("signed"). In that  case a schedule  is to  be appended  to this contract to show  the definitive  proportion  of  liability  under this contract underwritten  by each (re)insurer  (or, in the case of a Lloyd's  syndicate, the total of the proportions underwritten  by all the members of the syndicate  taken together).  A definitive proportion (or, in the case of a Lloyd's  syndicate, the total of the proportions underwritten  by all the members of a Lloyd's  syndicate  taken together)  is referred to as a "signed  line". The signed  lines shown  in the schedule  will prevail over the written  lines unless a proven error  in calculation has occurred.

Although reference is made at various points in this clause to "this contract" in the singular, where the circumstances so require this should be read as a reference to contracts in the plural.

Alesco Delegated Authority is a trading name of Arthur J. Gallagher (UK) Limited which is authorised and regulated by the Financial Conduct Authority. Registered Office: The Walbrook Building, 25 Walbrook, London EC4N 8AW. Registered in England and Wales. Company Number: 1193013. www.alescorms.com

| Broker Initial | L/U Initial |
|---|---|
|  |  |

**1262 AJG
UNIQUE MARKET
REFERENCE:**



| | | |
|---|---|---|
| **ORDER HEREON:** | 100.00% of 100.00% | |

**BASIS OF WRITTEN
LINES:** Percentage of Whole

**BASIS OF SIGNED LINES:** Percentage of Whole

**SIGNING PROVISIONS:** In the event that the written lines hereon exceed 100% of the order, any lines written "To Stand" will be allocated in full and all other lines will be signed down in equal proportions so that the aggregate signed lines are equal to 100% of the order without further agreement of any of the Insurers.

However:

a)   in the event that the placement of the order is not completed by the commencement date of the period of (re)insurances then all lines written by that date will be signed in full;

b)   The (Re)Insured and/or Arthur J. Gallagher (UK) Limited T/A Alesco Delegated Authority may elect for the disproportionate signing or (re)insurers lines, without further specific agreement of (re)insurers, providing that any such variation is made prior to the commencement date of the period of (re)insurance.

c)   The signed lines resulting from the application of the above provisions can be varied, before or after the commencement date of the period of (re)insurance, by the documented agreement of the (Re)insured and all (re)insurers whose lines are to be varied. The variation to the contracts will take effect only when all such (re)insurers have agreed, with the resulting variation in signed lines commencing from the date set out in that agreement.

d)   Arthur J. Gallagher (UK) Limited T/A Alesco Delegated Authority are permitted to allocate security to (Re)Insured's where required.

**WRITTEN LINES** As attached

In a co-insurance placement, following (re)insurers may, but are no obliged to, follow the premium charged by the Lead (re)insurer.

(Re)insurers may not seek to guarantee for themselves terms as favorable as those which others subsequently achieve during the placement.

Alesco Delegated Authority is a trading name of Arthur J. Gallagher (UK) Limited which is authorised and regulated by the Financial Conduct Authority. Registered Office: The Walbrook Building, 25 Walbrook, London EC4N 8AW. Registered in England and Wales. Company Number: 1193013. www.alescorms.com

| Broker Initial | L/U Initial |
|---|---|
| | |

**1262 AJG
UNIQUE MARKET
REFERENCE:** ▮▮▮▮▮▮▮▮



## Endorsements

### PREMIUM PAYMENT WARRANTY (LSW 585)

IT IS WARRANTED that all Premiums due to the Underwriters under this Policy are paid within 90 days from Inception.

Non-receipt by Underwriters of such premiums by Midnight on the Premium Due date shall render this Insurance Policy void with effect from Inception.

11/93
LSW585

### CONTRACTS (RIGHTS OF THIRD PARTIES) ACT 1999

A person who is not a party to this contract has no right under the Contracts (Rights of Third Parties) Act 1999 to enforce any term of this contract but this does not affect any right or remedy of a third party which exists or is available other than by virtue of this Act.

### TRADE MARK CONDITION CLAUSE

It is hereon noted and agreed that

1.  **Insurers** liability under this policy shall cease to apply in any territory where a registered Trade Mark is invalidated, revoked or cancelled by that territory's Intellectual Property Office (or other authorised entity or court of competent jurisdiction) with effect from the date of such invalidation, revocation or cancellation.

2.  **Insurers** liability under this policy shall cease to apply in arty territory where a pending Trade Mark application is subsequently declined by that territory's Intellectual Property Office (or other authorised entity) with effect from the date of declinature.

3.  **Insurers** liability under this policy shall cease to apply in any territory where a registered Trade Mark is not renewed by the Insured with effect from the date of such non-renewal.

4.  **Insurers** liability under this policy shall cease to apply in any territory where a pending Trade Mark application is not withdrawn or not progressed by the Insured with effect from the date of such withdrawal.

Alesco Delegated Authority is a trading name of Arthur J. Gallagher (UK) Limited which is authorised and regulated by the Financial Conduct Authority. Registered Office: The Walbrook Building, 25 Walbrook, London EC4N 8AW. Registered in England and Wales. Company Number: 1193013. www.alescorms.com

| Broker Initial | L/U Initial |
|---|---|
|  |  |

**1262 AJG
UNIQUE MARKET
REFERENCE:** ███████████



## DOMAIN NAME CONDITION CLAUSE

It is hereon noted and agreed that

1. **Insurers** liability under this policy shall cease to apply in any territory where a Domain Name is revoked or cancelled by a relevant domain registry (or other authorised entity or court of competent jurisdiction) with effect from the date of such revocation or cancellation.

2. **Insurers** liability under this policy shall cease to apply in any territory where a Domain Name registration is not renewed by the Insured with effect from the date of such non-renewal.

3. **Insurers** shall have no liability in respect of a Domain Name where the Insured is not the registered owner.

## NON PRACTICING ENTITY ASSERTION MANAGEMENT ENDORSEMENT

It is hereon noted and agreed that in respect of any matter arising from a **Non-Practicing Entity** this **Policy** shall respond as follows:

Following receipt of a written notification of the requirement of the **Insured,** or an invitation for the **Insured**, to license the intellectual property rights of the other party in respect of their past and/or continued use, sale or offering for sale of certain products, services or processes, the **Insured** shall immediately contact and liaise with the NPE Managers shown below, who shall assist and guide the **Insured** in dealing with the matter.

NPE Managers: Origin Ltd

## RESTRICTED TERRITORY EXCLUSION

Notwithstanding anything to the contrary in this Policy, this Policy shall not provide coverage with respect to any claim, loss or liability either incurred by a person or legal entity located in, or arising out of any loss or liability occurring within, a **Restricted Territory**. Persons and entities located in a **Restricted Territory** are not insured under this Policy, and no payment shall be made to such persons or entities, or to the **Insured** for their financial interest in such persons or entities, or claims losses or liability.

Definitions

**Insured** means all persons and entities named in the **Schedule**.

**Restricted Territory** means Belarus, Cuba, Iran, Myanmar, North Korea, the Russian Federation, Sudan, Syria, Ukraine or Venezuela.

Alesco Delegated Authority is a trading name of Arthur J. Gallagher (UK) Limited which is authorised and regulated by the Financial Conduct Authority. Registered Office: The Walbrook Building, 25 Walbrook, London EC4N 8AW. Registered in England and Wales. Company Number: 1193013. www.alescorms.com

| Broker Initial | L/U Initial |
|---|---|
|  |  |

**1262 AJG
UNIQUE MARKET
REFERENCE:** ████████████



**Policy Wording**

Alesco Delegated Authority is a trading name of Arthur J. Gallagher (UK) Limited which is
authorised and regulated by the Financial Conduct Authority. Registered Office: The Walbrook
Building, 25 Walbrook, London EC4N 8AW. Registered in England and Wales. Company
Number: 1193013. www.alescorms.com

| Broker Initial | L/U Initial |
|---|---|
|  |  |

# Enterprise Risk

## Intellectual Property Infringement Liability

## Policy Form

# Empowered Expertise

www.tokiomarinekiln.com

# NOTICES

Cover under this **Policy** is provided on a Claims Made and Reported Basis and only applies to **Claims** in respect of an **Action** or **Licensing Request** that is first made against the **Insured** or any **Circumstance** of which the **Insured** first becomes aware during the **Policy Period** and is notified to **Insurers** during the **Policy Period** or any **Extended Notification Period**, subject at all times to the **Policy** terms, conditions, limitations and Exclusions.

The **Insured** will have provided to **Insurers** certain **Application Information**, which has been relied upon by **Insurers** in issuing this **Policy** and setting the terms and the premium and is deemed to be incorporated herein.

This **Policy** contains one or more coverages and only affords cover under those Sections of the Insuring Clause that are indicated as operative in the **Declarations**.

This **Policy** does not provide for any duty by **Insurers** to defend the **Insured**.

This **Policy** contains and specifically identifies preconditions to **Insurers'** liability under this **Policy** at Section 7 in respect of Pre-Inception Information. Please ask either your insurance broker, intermediary or advisor or **Insurers** if you require any clarification of this **Policy**.

Payment by **Insurers** of any **Insured Loss** under this **Policy** shall reduce and may completely exhaust the Limits of Indemnity shown in the **Declarations**.

In the event that the **Insured** receives any compensatory payments, or contribution to costs, from a third party in respect of any **Claim** for **Insured Loss** that is paid or payable by **Insurers** under this **Policy**, the **Insured** shall have a duty to reimburse **Insurers** for any **Insured Loss** that **Insurers** have paid or have undertaken in writing to pay under this **Policy**. **Insurers** shall not seek to recover any sum in excess of the compensatory payments or the contribution to costs received by the **Insured** or that is in excess of their obligations for **Insured Loss** under this **Policy**.

Any word or phrase printed in bold typeface shall have the meaning specified in Section 8 Definitions below.

Please review the cover afforded under this **Policy** carefully and discuss the cover provided with your insurance broker, intermediary or advisor.

## Data Protection Notice

**Insurers** and other group companies will use any information given together with other information for the administration of this **Policy**, the handling of claims and the provision of customer services in accordance with the Privacy Notice at https://www.tokiomarinekiln.com/privacy/. It is the Insured's responsibility when providing any personal information to **Insurers** about other individuals, such as family, friends or other associates, to inform them about our use of their data.

The information may be disclosed to **Insurers'** service providers and agents for these purposes.  It may also be disclosed to the **Insured's** Insurance Adviser.

 **Insurers'** handling of the information is consistent with the London insurance market's Core Uses Information Notice at https://lmg.london/wp-content/uploads/2019/07/LMA-Insurance-Market-Information-Uses-Notice-post-enactment-31-05-2018.pdf.

If further information is required as to how data is processed by **Insurers**, or as to the exercise of any rights under any data privacy laws, the **Insured** may contact:
**The Data Protection Officer**

**Tokio Marine Kiln, 20 Fenchurch Street, London EC3M 3BY**
T: +44 (0)20 7886 9000
dpo@tokiomarinekiln.com



# 1.  INSURING CLAUSE

To the extent the **Insured** is entitled to cover for **Insured Loss** within the **Territorial Limits** as specified in respect of each **Insuring Clause** shown as operative in the **Declarations**, **Insurers** shall indemnify the **Insured** for any **Claim** resulting from:

  i.    an **Action** that is first made against the **Insured** or an **Indemnified Party**; or

  ii.   a **Licensing Request** that is first received by the **Insured** or an **Indemnified Party**; or

  iii.  any **Circumstance** of which the **Insured** first becomes aware;

during the **Policy Period** and that is notified to **Insurers** during the **Policy Period** (or any **Extended Notification Period** for an **Action** or **Licensing Request** only if this **Policy** is cancelled or not renewed) and which directly relates to one or more of the following:

## A.   INFRINGEMENT DEFENCE

  i.   an allegation by a **Third Party** that the **Insured** is infringing the intellectual property rights of a third party as a result of their actual or prospective, manufacture (including the process of manufacture), use, keeping, importing, sale or offering for sale, possession, license, distribution or provision of:

    a.   the **Insured Business Activities**; or

    b.   the **Insured Products**; and/or

  ii.  an allegation by a **Third Party** that the **Insured** is infringing the intellectual property rights of a third party as a result of their actual or prospective use or licensing of the **Insured Intellectual Property** (but excluding any dispute with a licensor);

  iii. an allegation by a **Third Party** that the **Insured** has misappropriated and/or is utilizing without authorization **Third Party Trade Secrets** (other than any party that disclosed such trade secrets to the **Insured** under a written contract);

  iv.  groundless threats of infringement made by a **Third Party** against the **Insured** in writing alleging infringement of third party intellectual property rights by possession or use of an **Insured Product**, the **Insured Business Activities** or the **Insured Intellectual Property**; and/or

  v.   any **Appeals** and/or **Counterclaims** in respect of i.-iv. above.

## B.   INDEMNIFIED PARTY DEFENCE

  i.   an allegation by a **Third Party** that the **Indemnified Party** is infringing the intellectual property rights of a third party as a result of their actual or prospective, manufacture (including the process of manufacture), use, keeping, importing, sale or offering for sale, possession, license or distribution or provision of the **Insured Business Activities**, **Insured Products** or **Insured Intellectual Property**;

  ii.  an allegation made by a **Third Party** against an **Indemnified Party** that:

    a.   they are utilizing **Third Party Trade Secrets** that have been misappropriated by the **Insured** and/or provided to them by the **Insured** without due authorization; and/or

    b.   they are in possession of and/or utilizing confidential information regarding intellectual property rights wrongfully provided by the **Insured**;

  iii. groundless threats of infringement made by a **Third Party** against the **Indemnified Party** in writing alleging infringement of third party intellectual property rights by possession or use of an **Insured Product**, the **Insured Business Activities** or the **Insured Intellectual Property**; and/or

  iv.  any **Appeals** and/or **Counterclaims** in respect of i.-iii. above.



## 2.  LIMITS OF INDEMNITY

The total liability of **Insurers** under this **Policy** shall not exceed the aggregate Limit of Indemnity for all **Claims** specified in the **Declarations**. **Insurers'** liability for **Insured Loss** for any one **Claim**, subject to the aggregate Limit of Indemnity, is as specified in the **Declarations**.

Payment by the Insurers shall only be made following exhaustion of the **Self Insured Retention,** which shall be payable by the **Insured**. Payment of the **Self-Insured Retention** shall not erode the Limit of Indemnity, but payment of the **Coinsurance** shall erode the Limit of Indemnity.

## 3.  EXCLUSIONS

**Insurers** shall have no liability under this **Policy** for:

a)  Any **Claim** arising from a **Circumstance**, **Licensing Request** or an **Action** outside the **Territorial Limits**;

b)  Any **Claim** arising from a **Circumstance**, **Licensing Request** or an **Action** involving any intellectual property rights, business activities, products or agreements that are owned by, licensed to, manufactured or used by or entered into by the **Insured**, which have not been declared to **Insurers**, accepted by them and listed in the **Declarations**;

c)  Any **Claim** arising from an **Action** or **Licensing Request** between two or more persons named as **Insured** under this **Policy** or which is made on behalf of or at the request, direction or assistance of either of those parties;

d)  Any **Self Insured Retention** or **Coinsurance** payable by the **Insured**;

e)  Any **Claim** arising with a party with which the **Insured** has a written agreement unless Insuring Clauses B. is  shown as operative in the **Declarations**;

f)  Any **Claim** arising out of any **Circumstance**, **Licensing Request** or **Action** existing prior to the start of the **Policy Period**;

g)  Any taxes, fines or penalties, pre-agreed damages, punitive, exemplary or enhanced damages or that portion of any multiplied damages award which exceeds the amount multiplied, treble or other non-compensatory damages, including but not limited to damages awarded for willful infringement of a patent, and any future royalties, on-going royalties, or any other compensation that applies to activities of the **Insured** (including any proportion of a fully paid up license) beyond the date of any **Settlement** or an order or judgement of any **Court**;

h)  Any **Representative Fees & Expenses** which, in **Insurers'** sole discretion, are considered to be routine costs incurred in the procurement, prosecution, maintenance or collation of any intellectual property rights or monitoring for infringement of any intellectual property rights, which are not specifically occasioned by an **Action** or **Licensing Request** for which a **Claim** could be made under this **Policy.** Such excluded **Representative Fees & Expenses** include, but are not limited to, salaries and expenses of any **Directors & Officers** or **Employees**;

i)  Any **Claim** arising in respect of an opposition or observation made to any national or international intellectual property office by a third party to prevent the granting of or restrict the scope (pre-grant) of the **Insured Intellectual Property**;

j)  Any normal payroll costs, fees, costs and expenses of witnesses attending **Court** that are incurred by any person who is an **Employee**, agent, **Director & Officer** or in-house attorney of the **Insured** or **Indemnified Party** or any parent, subsidiary, associated or holding company of the **Insured** or **Indemnified Party**. This exclusion shall extend to any outside attorney or consultant when acting in the capacity as an employee, director, officer or in-house attorney of the **Insured** or **Indemnified Party**;

k)  Any **Insured Loss** incurred by the **Insured** prior to **Insurers** giving their written consent to a **Claim** or for which **Insurers** have not given their prior written approval;



l)   Any **Claim** arising from an **Action** or **Licensing Request** where the **Insured** intentionally, recklessly or willfully acted in disregard of a third party's' intellectual property rights or other civil rights and/or intentionally or knowingly breached the terms of an **Insured Agreement**, where the **Insured** knew or had reason to believe that te consequence of their actions might give rise to an **Action** or **Licensing Request** for which a **Claim** could be made under this **Policy**, unless the **Insured** is found innocent of such conduct by a **Court** or any arbitrator appointed in accordance with General Conditions e); Dispute resolutions

m)  Any **Claim** arising from any breach, repudiation, termination or suspension of any written contract, license or other agreement by the **Insured**, where such contract grants authority to the **Insured** in respect of the intellectual property rights being asserted against the **Insured** or an **Indemnified Party**;

n)   Any **Claim** arising out of the amount or timeliness of paying royalty fees or licensing fees to the third party bringing the **Action**;

o)   Any **Claim,** or subsequent counterclaim, resulting from any legal action initiated by the **Insured**, except where the legal action initiated is an approved **Appeal** or **Counterclaim**;

p)   Any **Claim** in respect of an **Action** or **Licensing Request** with any government body, trade regulator or customs authority whether regional, national, state or federal, as a regulatory action (including but not limited to a breach of anti-trust, restraint of trade, taxation or trading standards legislation) brought by or against the **Insured** or any **Indemnified Party**;

q)   Any **Claim** arising from an **Action** or **Licensing Request** caused or contributed to by the **Insured**'s actual or alleged dishonesty, fraudulent, malicious or criminal conduct, if the **Insured** is proven by a competent court or other judicial panel or authority to have been guilty of such conduct, or where any arbitrator appointed in accordance with General Conditions e) Dispute Resolution concludes that the **Insured** has engaged in such dishonesty, fraudulent, malicious or criminal conduct, or the **Action** or **Licensing Request** is dismissed;

r)   Any criminal proceedings, in the territory in which the **Action** is being brought, except where the **Action** is typically addressed by a civil procedure in the country where the **Insured** is domiciled;

s)   Any **Claim** arising from a **Circumstance**, **Licensing Request** or an **Action** that is not notified to **Insurers** during the **Policy Period** or **Extended Notification Period** as applicable;

t)   Any **Claim** for **Insured Loss** arising in respect of any past, current or future use of any **Standards Essential Patents**;

u)   Any **Claim** arising in respect of any actual or alleged breach of any warranty or indemnity given by the **Insured** under any written sale, purchase or asset transfer agreement;

v)   Any **Claim** arising from an **Action** brought in the International Trade Commission or the World Trade Organization;

w)   Any **Claim** brought about or contributed to, by, or consequent upon:

   i.   loss or destruction of, or damage to, any property whatsoever or any loss or expense whatsoever resulting or arising from such loss, destruction or damage including without limitation any loss of profit (whether flowing naturally from a breach or not), anticipated profit, revenues and anticipated savings;

   ii.  death of or bodily injury to any person;

   iii. breach of any duty owed by the **Insured** in providing any professional service or as a director or officer;

   iv.  defamation, malicious or injurious falsehood; or

   v.   any liability of whatsoever nature that is directly or in any way caused by or contributed to by or arising from;

      a)   ionizing radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel;

      b)   the radioactive, toxic, explosive or other hazardous properties of any explosive nuclear assembly or nuclear component thereof.

TOKIO MARINE
KILN

x) Any **Claim** involving the **Insured's** ownership or use of a **Domain Name** where the **Insured** did not seek to employ the Internet Corporation for Assigned Names and Numbers (ICANN) dispute resolution procedure or an equivalent domain name dispute resolution procedure, where such dispute resolution procedures are available.

y) Notwithstanding any provision to the contrary within this **Policy** or any endorsement thereto this **Policy** excludes any:

    i. **Cyber Loss**

    ii. loss, damage, liability, claim, cost, expense of whatsoever nature directly or indirectly caused by, contributed to by, resulting from, arising out of or in connection with any loss of use, reduction in functionality, repair, replacement, restoration or reproduction of any **Data**, including any amount pertaining to the value of such **Data;**

    regardless of any other cause or event contributing concurrently or in any other sequence thereto.

In the event any portion of this exclusion is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

This exclusion supersedes and, if in conflict with any other wording in the Policy or any endorsement thereto having a bearing on **Cyber Loss, Data** or **Data Processing Media**, replaces that wording.

z) Any part or proportion of the **Liability** or **Settlement** preceding the **Prior Liability Date.**

aa) Any loss, damage, claim, cost, expense or other sum, directly or indirectly arising out of, attributable to, or occurring concurrently or in any sequence with a Communicable Disease or the fear or threat (whether actual or perceived) of a **Communicable Disease.** Loss, damage, claim, cost, expense or other sum, includes, but is not limited to, any cost to clean-up, detoxify, remove, monitor or test:

    i. for a **Communicable Disease**, or
    ii. any property insured hereunder that is affected by such **Communicable Disease**

## 4.  CLAIMS CONDITIONS

**a) Notification of Claims**, **Licensing Requests** and **Circumstances**

    i. The **Insured** shall give to **Insurers** notice in writing of every **Action**, **Licensing Request** or **Circumstance** for which a **Claim** is being or may be made as follows (and in so doing complies strictly with each of a., b. and c.):

    a. as soon as reasonably practicable;

    b. in addition to and notwithstanding the obligation in a) i. a. above (which shall always apply:

      (i) if an **Action** or **Licensing Request** within the **Policy Period** or the **Extended Reporting Period**; or

      (ii) if a **Circumstance** within the **Policy Period;** and

    c. by providing the Notification Information requested at Claims Conditions 4 b) via recorded delivery post, e-mail or in person to the Address for Notice of Claims shown in the **Declarations**.

    ii. **Insurers** shall at their option not be liable for any **Action**, **Licensing Request**, **Circumstance** or **Claim** that is not properly notified to them by the **Insured** in accordance with Claims Condition a) i.;

    iii. Any **Circumstance** notified to **Insurers** in accordance with Claims Condition a) i. shall automatically be deemed to constitute notification for any subsequent **Action**, even if such **Action** arises beyond the **Policy Period**, but within the time limitations shown at Claims Conditions m).

**b)  Notification Information**

    i.   When notifying an **Action**, **Licensing Request** or **Circumstance** under Insuring Clauses A or B, the **Insured** shall provide **Insurers** with as full an account of the details relating to such **Circumstance**, **Licensing Request** or **Action** as known to them, which should include as a minimum:

        a.   the name and location of  all parties involved with the **Action**, **Licensing Request** or **Circumstance**;

        b.   copies of any correspondence between the **Insured** and all the other parties in respect to the **Action**, **Licensing Request** or **Circumstance**;

        c.   the potential financial impact of the **Circumstance**, **Licensing Request** or **Action** to the **Insured** (if known);

        d.   details of how and when the **Insured** first became aware of the **Circumstance**, **Licensing Request** or **Action**;

        e.   an overview or copies of any legal advice the **Insured** has obtained in respect of the matter (if any);

        f.   any investigatory work that the **Insured** has undertaken in order to ascertain merits of any **Action** or **Licensing Request**; and

        g.   the **Insured's** proposed course of action in relation to the **Circumstance**, **Licensing Request** or **Action**.

**Insurers** may request that the **Insured** provide additional information in order to fully consider coverage under any Insuring Clause.

**c)  Acceptance**

    i.   **Insurers** must have confirmed their acceptance of any **Claim** in writing before any **Insured Loss** can be paid. Acceptance will be given when:

        a.   **Insurers** have all the information that they need in order to evaluate the **Claim**;

        b.   **Insurers** have considered the information and concluded any further enquiries to their satisfaction;

        c.   **Insurers** are satisfied that the **Policy** terms and conditions have been complied with by the **Insured**; and

**d)  Consent**

Following acceptance of any **Claim** in accordance with Claims Conditions c), **Insurers** must have provided their consent in writing before:

    i.   any **Representative** is appointed to act by or on behalf of the **Insured** under this **Policy**; and

    ii.   any **Insured Loss** is incurred by or on behalf of the **Insured**.

**e)  Disputed Acceptance or Consent**

If **Insurers** have declined to accept a **Claim** or refused to grant or withdrawn their consent, the **Insured** may:

    i.   invoke the Dispute Resolution provision set out at General Conditions e); or

    ii.   request that an opinion is obtained from senior Counsel (of at least 10 years' call) who is a leading specialist in intellectual property or contract of the type in dispute in the relevant jurisdiction. If such Counsel's opinion is that the **Insured** has reasonable grounds and prospects of success in defending such **Claim**, **Insurers** will confirm acceptance and give or maintain consent and will pay the cost of obtaining the opinion. If such Counsel's opinion is otherwise, **Insurers** will refuse acceptance, consent or withdraw consent and the cost of obtaining the opinion (including costs of the **Representative** for any work they undertake in respect of referral) will be borne by the **Insured**.



**f) Appointment of Representatives**

i.   In respect of any **Action**, **Licensing Request** or **Circumstance** arising under Insuring Clauses A or B, **Insurers** will appoint a **Representative** (after having taken into account any preferences of the **Insured**) to act on behalf of the **Insured** and/or any **Indemnified Party** unless the **Insured** and **Insurers** have agreed otherwise prior to inception of this **Policy**;

ii.  If in the course of any **Action** or **Licensing Request**, the **Insured** wishes to appoint an alternative **Representative** to act in the further conduct of the **Action** or **Licensing Request**, it must first obtain **Insurers'** prior written consent;

iii. If in the course of any **Action**, the **Representative** recommends the retention of any specialist counsel, barrister, attorney, consultants or other experts (including damages/royalties experts, jury coaches, or investigation experts) specializing in relevant technical fields, **Insurers**:

   a.  will require a written explanation of the necessity, costs and commercial reasonableness;

   b.  reserve their right to appoint such specialist counsel directly;

   c.  reserve their right to substitute the recommended counsel with another firm of their choosing; and

   d.  will require that prior to their appointment, such specialist counsel must confirm in writing that they agree to and will adhere to any protocols agreed by **Insurers** with the **Representative** in respect of the **Claim** and conditions contained in this **Policy**;

   before agreeing to the appointment of the specialist counsel, either by **Insurers** or the **Representative**.

**g) Duty to Co-operate**

i.   The **Representative** must be given all information and assistance required in relation to any **Action** or **Licensing Request** accepted under this **Policy**. This must include a complete and truthful account of the facts of the case and all relevant documentary and other evidence in the **Insured's** power, possession or control (even where such information or evidence constitutes confidential information of the **Insured** or information protected legal privilege);

ii.  The **Insured** must obtain or execute all documents as necessary and attend any meetings or conferences when requested to do so by the **Representative;**

iii. **Insurers** shall be entitled to obtain from the **Representative** any information, document or advice relating to the **Claim** accepted under this **Policy,** whether or not privileged. On request, the **Insured** will give any instructions necessary to ensure such access. Where necessary, the **Insured**, the **Representative** and **Insurers** will make suitable arrangements to secure legal privilege;

iv.  **Insurers** shall have the right to make any investigation they deem necessary, including without limitation, any investigation with respect to the statements made in the proposal form or the information supplied by the **Insured** in connection with the **Policy** The **Insured** must take all reasonable steps to minimize the cost of a **Claim**, including where appropriate applying for transfer of the **Action** to a lower **Court** and assessing the appropriate level of legal representation.

v.   The **Insured** must not make any admission of liability without **Insurers'** prior written consent.

vi.  In all cases where the **Action** is settled in favor of the **Insured**, the **Insured** must seek to recover from any appropriate third party all **Insured Loss** to which the **Insured** is entitled.

vii. These conditions shall continue in full force at all times in respect of any **Claim** in which any payment of **Insured Loss** has been made by **Insurers**, including after the exhaustion of the Limit of Indemnity.

viii. **Insurers** shall at any time be entitled to assume the conduct and control of all or part of any **Claim** but shall not be obliged to do so.



**h) Representatives' Costs**

    i. Copies of all legal cost bills relating to the **Action** or **Licensing Request** which the **Insured** receives from the **Representative** must be forwarded to **Insurers** without delay. If requested by **Insurers**, the **Insured** must ask the **Representative** to submit such legal cost bills for costs assessment or certification by the Law Society, **Court** or other professional body as appropriate.

    ii. Although the **Insured** is responsible for payment of all **Representative Fees and Expenses**, **Liability**, **Withdrawal Expenses** and **Loss Mitigation**, **Insurers** will settle these directly on behalf of the **Insured**, provided that the invoices or equivalent are certified by the **Insured** to the effect that such have been properly incurred.

    iii. Payments by the **Insurers** shall only be made following exhaustion of the **Self Insured Retention**. Any **Coinsurance** shall be deducted from any payments made by **Insurers**. The **Insured** is responsible for payment of the **Self Insured Retention** and/or any **Coinsurance** directly to the **Representative** or applicable third party.

    iv. Any payments made by **Insurers** shall be deemed to be made on account, fully reserving **Insurers'** rights to have the **Representatives'** costs assessed at conclusion of the case or at the point of **Insurers'** liability ceasing, whichever shall be the sooner.

**i) Recovery and Reimbursement**

    i. The **Insured** shall use their best endeavors to secure an award of costs or damages in their favor in connection with any **Court** judgment or **Settlement**.

    ii. Following such an award or **Settlement** in favor of the **Insured**, the **Insured** shall procure prompt reimbursement (up to the amount of such award or **Settlement** and no more) to **Insurers** of any **Insured Loss** which **Insurers** have paid or have an obligation to pay under this **Policy**.

    iii. **Insurers** shall not seek to recover any sum in excess of their obligation in respect of **Insured Loss** or any sum in excess of the amount of any judgment, award, order, costs, damages or settlement received by the **Insured**. However, if **Insurers** have not yet been asked to pay such **Insured Loss** but would be obliged to pay such **Insured Loss**, the amount of **Insured Loss** shall be reduced by the reimbursement obligations of the **Insured** hereunder. Any such costs or damages obtained by the **Insured** shall be apportioned in the following manner:

      a. Expenses necessary to the recovery of any such amounts shall be apportioned between **Insurers** and the **Insured** and any other interested party, in the ratio of their respective recoveries as finally settled (excluding such expenses);

      b. the **Insured** or any other interested party that has paid an uninsured amount in excess of any payment made under this **Policy** shall first be reimbursed up to the amount of such excess payment, pro rata to their respective contributions;

      c. **Insurers** and the **Insured** are then to be reimbursed out of any remaining balance for any **Insured Loss** paid under this **Policy**, pro rata to their respective contributions, taking into consideration the **Coinsurance** as applicable;

      d. the **Insured** or any other interested party shall then be entitled to claim the residue, if any.

    iv. Notwithstanding the above, **Insurers** shall be entitled to exercise all rights of subrogation, ownership, possession or control including a lien on any award, order, costs, liability or settlement due to the **Insured** to recover the **Insured Loss** paid or payable under this **Policy**.

**j) Settlement Offers**

    i. The **Insured** must inform **Insurers** in writing as soon as an offer (whether written or oral) to settle an **Action** or **Licensing Request** is received, or an offer of compromise or payment into **Court** is made.

    ii. If the **Insured** fails to notify **Insurers** of any such settlement offer, then **Insurers** reserve the right to withdraw their consent to cover further **Insured Loss**.

    iii. The **Insured** must not make any offer to settle or enter into any agreement to settle an **Action** or **Licensing Request** without **Insurers'** prior written consent.



iv. If the **Insured** refuses to accept any third party offer to settle an **Action** or **Licensing Request** or accept any payment into **Court**, which is recommended by the **Representative** or **Insurers**, the **Insured** must then defend, investigate or settle the **Claim** at the **Insured's** own expense. As a consequence of the refusal, **Insurers'** liability for the **Claim** shall not be more than the amount of that recommended settlement or payment into **Court**, which shall always be within the Limit of Indemnity of the **Policy**

v. These conditions shall continue in full force at all times in respect of any **Claim** in which any payment of **Insured Loss** has been made by **Insurers**, including after the exhaustion of the Limit of Indemnity.

**k) Withdrawal of Consent**

i. **Insurers** have the right to withdraw their consent to the **Action** or **Licensing Request** if:

a. the **Insured** acts unreasonably in dealing with the **Action** and prejudices the outcome of the **Action**;

b. the **Representative** withdraws from representing the **Insured** in the **Action** or **Licensing Request**;

c. the **Insured** is in breach of the requirements of Claims Conditions g);

ii. If **Insurers** withdraw their consent, they shall, notwithstanding such withdrawal, pay for all **Insured Loss** to which the **Insured** is entitled under this **Policy** up to the date of such withdrawal.

iii. If **Insurers** withdraw their consent and the **Insured** disputes the decision, the **Insured** may invoke either of the remedies set out at Claims Conditions e).

iv. If the **Insured** withdraws the **Claim** or ceases or discontinues the **Action** or **Licensing Request** without **Insurers'** consent, the **Insured** shall pay all **Insured Loss** that arises in relation to such **Action** or **Licensing Request** whether arising before or as a result of such action. Any **Insured Loss** paid by **Insurers** shall be reimbursed by the **Insured**.

**l) Appeal Procedure**

i. If the **Insured** wishes to appeal against the decision of a **Court**, **Insurers'** prior written consent must first be obtained.

ii. In order to obtain such consent, the **Insured** must submit reasons to **Insurers** as soon as possible, allowing sufficient time for **Insurers** to consider granting consent.

iii. The **Insured** will be informed of **Insurers'** decision as soon as reasonably practicable and in any event before the date for submission of the notice of appeal.

iv. If consent is given, the **Insured** must co-operate with **Insurers** in the conduct of the appeal.

**m) Time Limitations**

**Insurers** shall not be liable for any **Insured Loss** under this **Policy** arising out of a **Circumstance** or **Licensing Request** which is notified to them but does not mature into an **Action** or **Claim** for a period of thirty six (36) months following notification.

**n) Non-Admitted Insurance**

The **Named Insured** on behalf of all **Insureds** acknowledges and recognises by accepting this contract of insurance that it is possible that not all entities and/or persons named as or falling within the definition of **Insured** within this **Policy** may be capable of enforcing this contract of insurance, or in respect of which there may be regulatory or other adverse impact by reason of the **Underwriters'** lack of a license in one or more particular territories or by the choice of the **Named Insured**. Such entities and/or persons are hereafter referred to as a "Local Entity or Person".

Such Local Entity or Person is not a party to or insured under this contract of insurance and cover in respect of such Local Entity or Person shall be provided to the **Named Insured** in respect of its insurable financial interest in such Local Entity or Person if the **Named Insured** benefits financially from the continued operation and preservation of the Local Entity or Person and its assets and/or would suffer a detriment by reason of any loss, damage, impairment or liability sustained by such Local Entity or Person.



Where this contract constitutes non-admitted insurance permissible under applicable law, the **Underwriters** shall only be responsible for providing any locally required bonds, local fiscal charges, certificates of insurance or any other documents as evidence of insurance if and to the extent that its provision of such documentation and cover is locally authorised, permissible and lawful.

Where loss or damage of the financial interest of the **Named Insured** in respect of any Local Entity or Person is indemnified under this contract, the **Underwriters** shall be subrogated to all rights and remedies of the **Named Insured**. If requested by the **Underwriters**, the **Named Insured** shall:

   a)  Report fully and fairly on all causes of action which the Local Entity or Person may have against the third party arising out of the facts and circumstances which gave rise to its loss;

   b)  Procure that the Local Entity or Person shall take all appropriate steps in respect of any potential recovery including litigation against any such third party (including any insurer(s) issuing a policy to that Local Entity or Person):

      i.  in the name of that Local Entity or Person or any plaintiff with the appropriate right to bring such a claim in the relevant court or arbitral forum;

      ii.  in respect of which claim the relevant claimant shall effect the directions and instructions of the **Underwriters** through the **Named Insured**, including the investigation, adjustment and defence of any loss which might be recoverable with access to books, records, bills invoices, vouchers and other relevant information, the reasonable costs of which shall be paid by the **Underwriters** in accordance with the terms and limits of this Policy save that where the sum claimed exceeds the indemnity provided by this clause the Underwriters shall only make a proportionate contribution to such costs in the ratio of the indemnified loss to the total claim;

The **Named Insured** shall procure that the Local Entity or Person assigns to the **Named Insured** the benefit of any cause of action it may have against any such third party (including any insurer issuing a policy to the Local Entity or Person). If other **Insureds** or the **Named Insured** subsequently recover any sum from a third party in respect of such cause of action the **Named Insured** shall repay the corresponding amount to **Underwriters** hereon.

Any misrepresentation, failure to disclose material information, false statement, fraudulent or exaggerated claim made by or on behalf of a Local Entity or Person shall be treated as made by the **Named Insured**.

## 5.   GENERAL CONDITIONS

   a)  **Allocation**

If there are multiple **Actions** or **Licensing Requests** constituting one **Claim**, and if one or more, but not all of the **Actions** or **Licensing Requests** are not covered by this **Policy**, in whole or in part, the **Insured** and **Insurers** shall use their best efforts to fairly and reasonably allocate **Insured Loss** between such **Actions** or **Licensing Requests**. If the **Insured** and **Insurers** are unable to agree upon such an allocation, then their dispute shall be subject to dispute resolution pursuant to General Conditions e) – Dispute Resolution. In such dispute resolution, no presumption shall exist as to what is a fair and reasonable allocation. Furthermore, if the **Insured** and **Insurers** are unable to agree upon such an allocation, **Insurers** shall advance **Insured Loss** on behalf of the **Insured** in the proportion that **Insurers** believe to be proper until a different allocation is agreed upon by the **Insured** and **Insurers**, or is determined through dispute resolution pursuant to General Conditions e) – Dispute Resolution. Any such allocation agreed to or determined by dispute resolution shall be applied retroactively to all **Insured Loss** paid with respect to the **Claim**, notwithstanding any prior advancement to the contrary. Any advancement of **Insured Loss** shall not apply to or create any presumption with respect to the allocation **Insured Loss** on account of any other **Claim**.

   b)  **Assignment**

The **Insured's** rights under this **Policy** may not be assigned without **Insurers'** prior written agreement, such agreement not to be unreasonably withheld.



c)  **Cancellation**

This **Policy** may be cancelled by the **Insured** by providing written notice to the **Insurers** and on receipt of such notice, the **Policy Period** will be amended to the date of receipt of such notice and **Insurers** will refund the unearned premium computed at the customary short rate of **Insurers** as shown at Section 9 - Short Rate Cancellation Table, unless a **Claim** has been made or **Circumstance** notified in which case the full annual premium is due. **Insurer's** liability will cease immediately upon cancellation by the **Insured** and the **Extended Notification Period** will not apply. Where a **Claim** or **Circumstance** has been notified, **Insurers** shall retain the Premium in full until such time as the **Insured** releases **Insurers** from any liability hereunder.

This **Policy** may be cancelled by or on behalf of **Insurers** following thirty (30) days' written notice to the last known agent of the **Insured**, after which **Insurers** will refund the unearned premium calculated at a proportional daily rate to the end of the **Policy Period**. **Insurers'** liability under this **Policy** will cease immediately upon expiry of the thirty (30) days' notice of cancellation, subject only to the notification of **Actions** during the **Extended Notification Period**. Where a **Claim** or **Circumstance** has been notified hereunder, **Insurers** shall retain the Premium in full until such time as the **Insured** releases the **Insurers** from any liability hereunder.

d)  **Change in Control**

If during the **Policy Period**:

  i.   the **Insured** consolidates, merges into, or sells all or substantially all of its assets to another person or entity; or
  ii.  another person or entity acquires management control of the **Insured**; or
  iii. the **Insured** becomes **Insolvent** or files for bankruptcy;

then coverage shall automatically terminate as of the effective date of any such change in control and the **Insurer** shall return any unearned portion of the premium to the **Insured**. For the avoidance of doubt, in the event a **Claim** is already reported to the **Insurer**, then coverage shall continue and the **Insurer** shall not be relieved of its obligations hereunder with respect to any such existing **Claim**.  The **Insurer** may, in its sole discretion, waive the provisions of this section.

e)  **Dispute Resolution**

Any question or difference arising between **Insurers** and the **Insured** concerning the construction, meaning or extent of this **Policy** or any dispute arising out of or in connection with this **Policy** (including as to whether there are reasonable grounds in an **Action**), shall be referred to a qualified mediator in a good faith effort to negotiate a resolution of the dispute, prior to the initiation of any arbitration. The party electing to mediate shall provide written notice to the other party setting forth its request to mediate and a brief statement regarding the issue to be mediated. The persons shown in the **Declarations** are authorized and directed to accept the Notice of Mediation on behalf of the **Insurers**. The **Insured** is authorized and directed to accept the Notice of Mediation on behalf of any **Insured**.

As a condition precedent to any right of action hereunder, in the event that a good faith effort to mediate cannot resolve a dispute between any **Insured** and **Insurers** involving this **Policy** or a **Claim** or **Circumstance** hereunder, it is hereby mutually agreed that such dispute shall be determined by final and binding arbitration before a single arbitrator. If the parties cannot mutually select the arbitrator, the parties will both refer their choice of arbitrator to the American Arbitration Association for selection.

If the dispute arose as a consequence of **Insurers** declining to accept a Claim under Claims Condition c) or their refusal of withdrawal of consent under Claims Conditions d) or k) and the arbitrator's decision is in favor of **Insurers**, the cost of the arbitration (including the costs of the **Representative**) shall be borne by the **Insured**. If the arbitrator's decision is in favor of **Insured**, the cost of the arbitration (including the costs of the **Representative**) shall be borne by **Insurers**.

If the difference or question relates to any other matter under this **Policy**, the costs of the arbitration shall be borne by the parties in such proportion as may be determined by the arbitrator.

f)  **Entire Contract**

By acceptance of this **Policy**, the **Insured** agrees that the statements in the **Declarations** and **Proposal Information** are its agreements and representations, that this **Policy** is issued in reliance upon the truth of such representations and that this **Policy** embodies all agreements existing between the **Insured** and **Insurers** relating to the insurance issued under this **Policy.**

TOKIO MARINE
KILN

g) **Fraudulent Claims**

   i. If the **Insured** makes a fraudulent **Claim** under this **Policy**, **Insurers**:

      a) are not liable to pay the **Claim**;

      b) may recover from the **Insured** any sums paid by **Insurers** to the **Insured** in respect of the **Claim**;

      c) may by notice to the **Insured** treat the contract as having been terminated with effect from the time of the fraudulent act.

   ii. If **Insurers** exercise their right under clause i.c) above;

      a) **Insurers** shall not be liable to the **Insured** in respect of a relevant event occurring after the time of the fraudulent act; and

      b) **Insurers** need not return any of the premiums paid.

h) **Governing Law**

This **Policy** and any related dispute  arising between the **Insured** and **Insurers**, shall be governed and construed in accordance with the laws of the State of New York, (without reference to its conflict of laws principals) and shall be subject to the exclusive jurisdiction of the New York Courts, unless agreed otherwise and is stated in the **Declarations**.

i) **Innocent Non-Disclosure**

**Insurers** will not exercise any right to avoid or rescind this **Policy** or to reject all or part of any **Claim** where there has been non-disclosure or material misrepresentation of facts or untrue statements in the proposal form or any accompanying information supplied to **Insurers** by the **Insured** or any agent of the **Insured**, as long as such misrepresentation or non-disclosure was (in **Insurers'** reasonable opinion) free from any dishonest intent.

j) **Insurers' Liability**

**Insurers'** liability under any and all contracts of insurance evidenced or deemed to be evidenced by this **Policy** shall be the liability specified in this **Policy** as applicable to any one such contract and shall not (save as so specified) be varied or deemed varied by virtue of the number or type of persons named as **Insured** or the number or type of **Claims** under this **Policy**.

k) **Notices (General)**

Notice under this **Policy** shall be deemed given:

   i. to **Insurers** on the 2nd business day after posting if sent by first class prepaid post to the address given in the **Declarations** or to such other address as has been notified to the **Insured** for this purpose from time to time;

   ii. to **Insurers** if sent by email without any bounce back or other indication of unsuccessful delivery; orii. to the **Insured**  on the 2nd business day after posting if sent by post to his last known address and/or the insurance broker, intermediary or Insurance Advisor that placed this **Policy** with **Insurers**.

l) **Other Insurance**

If other valid and collectible insurance is available to the **Insured** covering a loss also covered by this **Policy**, including but not limited to insurance that includes a duty to defend, other than insurance that is specifically stated to be in excess of this **Policy**, the insurance afforded by this **Policy** shall be excess of and shall not contribute with such other insurance. Nothing herein shall be construed to make this **Policy** subject to the terms, definitions, conditions and limitations of such other insurance.

m) **Sanctions, Limitations and Exclusion Clause**

No **Insurers** shall be deemed to provide cover and no **Insurers** shall be liable to pay any **Claim** or provide any benefit hereunder to the extent that the provision of such cover, payment of such **Claim** or provision of such benefit would expose **Insurers** to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or the United States of America.



n) **Severability**

If any of the provisions of this **Policy** are deemed to be contrary to any applicable law, the parties shall use their best endeavors to redraft such provisions to reflect their intentions whilst conforming with such law. The provisions in this **Policy** are severable, and the voiding, illegality, unlawfulness or unenforceability of any provision by operation of law shall not apply to the entire **Policy**, but only to such provision.

o) **Service of Suit**

Subject to the application of General Conditions e) above, it is agreed that any dispute regarding this **Policy**, including the failure of **Insurers** hereon to pay any amount claimed to be due under this **Policy**, shall be submitted to the jurisdiction of a court of competent jurisdiction within the United States of America and that the **Insured** and the **Insurers** waive their right to a jury trial.

Nothing in this clause constitutes or should be understood to constitute a waiver of the **Insurers** rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or seek a transfer of a case to another court as permitted by the laws of the United States or any state in the United States. It is further agreed that service of process in such suit may be made upon the persons shown in the **Declarations**, and that in any suit instituted against any one of them upon this contract; the **Insurers** will abide by the final decision of such court, or of any appellate court in the event of an appeal.

The persons shown in the **Declarations** is authorized and directed to accept service of process on **Insurers** behalf in any such suit and/or upon the **Insured**'s request to give a written undertaking to the **Insured** that they will enter a general appearance upon the **Insurers** behalf in the event such a suit shall be instituted.

Pursuant to any statute of any state, territory, or district of the United States which makes provision therefore, **Insurers** hereby designate the Superintendent, Commissioner, or Director of Insurance or other officer specified for that purpose in the statute, or his successor in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on the **Insured**'s behalf or any beneficiary hereunder arising out of this **Policy**, and the **Insurers** hereby designate the persons shown in the **Declarations** as the persons to whom the said officer is authorized to mail such process or a true copy thereof.

No further action, shall lie against **Insurers**, or their representatives until **Insurers** obligation under any **Claim** has been finally determined either by written agreement with the **Insured**, or by final judgment after the actual trial of the issues and the time to appeal therefrom has expired without an appeal having been taken or, if any appeal has been taken, then until after such appeal has been finally determined.

p) **Subrogation**

The **Insured** shall at all times take all necessary and reasonable steps to preserve evidence and provide all other co-operation as may be reasonably required by **Insurers** in the event that they were to pursue a subrogated claim. This will apply both before and after any payment has been made by **Insurers** under this **Policy**. If any payment is made under this **Policy** and there is available to **Insurers** any of the **Insured's** rights of recovery against any third party, then the **Insured** shall take all reasonable steps to maintain all such rights of recovery. The **Insured** shall give **Insurers** all such assistance in their power as **Insurers** may require in order to secure their rights and remedies and at **Insurers'** request shall make relevant personnel available and execute all documents necessary to enable **Insurers** to effectively bring suit in the name of the **Insured**. The **Insured** shall do nothing to prejudice such rights.

q) **War and Civil War Exclusion Clause**

Notwithstanding anything to the contrary contained herein this **Policy** does not cover loss or damage directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalization or requisition or destruction of or damage to property by or under the order of any government or public or local authority.

r) **Mergers and acquisitions**

If the **Named Insured** completes the legal acquisition of another entity during the **Policy Period**, then that acquired entity will automatically be included as an **Insured** but only with



respect to **Claims** or **Loss** sustained or occurring after the date of the acquisition and otherwise qualifying for coverage under this **Policy**. Acquired entities will not be automatically included where;

  i. that acquired entity has an annual revenue of more than 20% of the **Named Insured's** annual revenue (evaluated according to the last set of audited accounts formally filed by that entity against the information provided by the **Insured** when applying for this **Policy**); or

  ii. that acquired entity has been involved in an **Action** in the last five years;

  iii. the legal acquisition is made by an **Insured** that is not the **Named Insured**;

  iv. the products, services, business activities and/or intellectual property of the acquired entity are in a different industry, business area or are fundamentally different to the **Insured Products**, **Insured Business Activities** or **Insured Intellectual Property**.

If the above cover is not automatically provided to the newly acquired entity, to obtain cover the **Insured** must notify and obtain the written consent of the **Insurers**, and agree to pay any additional premium required.

# 6. How to make a complaint

**Insurers** aim to ensure that all aspects of this **Policy** are dealt with promptly, efficiently and fairly. At all times **Insurers** are committed to providing the **Insured** with the highest standard of service.

If the **Insured** has any questions or concerns about this **Policy** or the handling of a **Claim** the **Insured** should, in the first instance, contact:

Complaints
Tokio Marine Kiln
20 Fenchurch Street
London
EC3M 3BY

Telephone +44 (0)20 7886 9000
Email complaints@tokiomarinekiln.com

If the **Insured** remains dissatisfied then the **Insured** can contact Lloyd's at any time at**:**

Complaints, Lloyd's Market Services, One Lime Street, London EC3M 7HA; Tel: 020 7327 5693; Fax: 020 7327 5225; E-mail: complaints@lloyds.com

Details of Lloyd's complaints procedures, including timescales for resolution are specified in a leaflet "Your Complaint - How We Can Help" available at www.lloyds.com and are also available from the above address.

The **Insured** may be entitled to refer their complaint to the Financial Ombudsman Service (FOS). The contact details for the FOS are: The Financial Ombudsman Service, Exchange Tower, London E14 9SR. Telephone 0800 0234567 (calls to this number are free from "fixed lines" in the UK) or 0300 1239123 (calls to this number are charged at the same rate as 01 and 02 numbers on mobile phone tariffs in the UK). Email complaint.info@financial-ombudsman.org.uk.

Making a complaint does not affect the **Insureds'** right to take legal action, subject to clause 6.e) above.



## 7.  Pre-Inception Information – Licensing Requests and Actual or Possible Infringement

Subject to General Conditions i) - Innocent Non-Disclosure and to the duty of good faith the **Insured** acknowledges and agrees that it is a precondition to **Insurers'** liability under this **Policy** that the following matters are true and accurate at **Inception**:

a. The **Insured** has not received any written or oral communication from a third party (or an **Indemnified Party**) that they (or any **Indemnified Party)** are or may be infringing the intellectual property rights of that third party or may require to take a license to use to the intellectual property rights of that third party prior to inception of this **Policy**.

b. The **Insured** is not aware of any actual or likely infringement of the intellectual property rights of a third party by them or an **Indemnified Party** (including advice received from their legal and professional advisors) prior to inception of this **Policy**.

c. The **Insured** has not received any written or oral communication from a third party alleging that they (or any **Indemnified Party)** have misappropriated and/or are utilizing without authorization **Third Party Trade Secrets**.

Where this **Policy** is a renewal of coverage with the **Insurers**, precondition a) shall not apply in respect of any matter that has been notified as a **Claim** or **Circumstance** to **Insurers** under such preceding **Policy**.

## 8. DEFINITIONS

In this **Policy**, words in the singular shall also include the plural and vice versa and words in the masculine shall also include the feminine. Any word or phrase printed in bold typeface shall have the following meaning:

**Action**

Any **Legal Action** commenced or threatened against the **Insured** or any **Indemnified Party** seeking **Injunctive Relief** and/or **Liability** which forms the subject of a **Claim** in accordance with the terms and conditions of this **Policy**, including without limitation any **Appeal**.

**Appeal**

Any appeal against a judgment or decision of a **Court** or the resisting of such an appeal, to which **Insurers** have given their prior written approval.

**Application Information**

The completed proposal form, copy contracts and agreements, marketing and other product related materials, schedules or registers of intellectual property rights, agreements or products, details of prior disputes and litigation or any other information provided to **Insurers** in writing by, or on behalf of the **Insured**.

**Circumstance**

Any of the following:

i. any knowledge or suspicion held by the **Control Group** in respect of  the **Insured's**, or an **Indemnified Party's**, actual infringement or anticipated allegations of infringement of third party intellectual property rights;

ii. any knowledge held by the **Control Group** of any third party intellectual property rights (registered or unregistered) whether considered valid by the  **Control Group** or not, the claims of which conflict with any **Insured Intellectual Property** or an **Insured Product**;

which is likely to  result in an **Action** and has been notified to **Insurers** in accordance with the terms and conditions of this **Policy**

**Claim**

A request for indemnity for **Insured Loss** made under this **Policy** by the **Insured** in respect of an **Action**, **Licensing Request** or **Circumstance** that arises in and is subject to a jurisdiction within the

**TOKIO MARINE**
**KILN**

**Territorial Limits**. All **Actions**, **Licensing Requests** or **Circumstances** arising out of the same original cause or event shall be regarded as one **Claim**.

**Coinsurance**

The amount specified in the **Declarations** which the **Insured**, following payment of the **Self Insured Retention**, shall pay as a contribution towards the cost of any one **Claim** as **Insured Loss** is incurred.

**Competitor**

Any owner or exclusive licensee (including any parent, subsidiary or associated entity thereof) of a **Third Party Patent** that:

    i.    shares in common with the **Insured** at least one realized or potential customer, or undertakes similar business activities and/or manufactures, sells or distributes products or services with similar or substitute features, components, processes or technologies to the **Insured Business Activities**, the **Insured Intellectual Property** or **Insured Products**; or

    ii.    generated more than 50% of its revenues from undertaking those similar business activities during the calendar year immediately prior to the first day of the **Policy Period** (excluding revenues from patent enforcement through licensing and assertion)

Any entity that is contractually obligated to share revenue or earnings, in any way (including repayments of debt obligations) solely with a person or entity that is a **Competitor** of the **Insured**, shall likewise be considered a **Competitor**.

**Control Group**

Any of the Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, General Counsel and all in-house lawyers, Chief Intellectual Property Officer and all members of the intellectual property department(s), Risk Manager and all members of the risk management department(s), board members and other executive officers of the **Named Insured** or **Insured.**

**Communicable Disease**

means any disease which can be transmitted by means of any substance or agent from any organism to another organism where:

i.    the substance or agent includes, but is not limited to, a virus, bacterium, parasite or other organism or any variation thereof, whether deemed living or not, and

ii.    the method of transmission, whether direct or indirect, includes but is not limited to, airborne transmission, bodily fluid transmission, transmission from or to any surface or object, solid, liquid or gas or between organisms, and

iii.    the disease, substance or agent can cause or threaten damage to human health or human welfare or can cause or threaten damage to, deterioration of, loss of value of, marketability of or loss of use of property insured hereunder.

**Computer System**

Any computer, hardware, software, communications system, electronic device (including, but not limited to, smartphone, laptop, tablet, or wearable device), server, cloud or microcontroller including any similar system or any configuration thereof and including any associated input, output, data storage device, networking equipment or back up facility, owned or operated by the **Insured** or any other party.

**Counterclaim**

Legal proceedings brought by the **Insured** (to which **Insurers** have given their prior written approval) or against the **Insured**, as a counterclaim (countersuit) or crossclaim in direct response to an **Action**, providing such legal proceedings are brought within a **Court** and are subject to a jurisdiction within the **Territorial Limits**.

**Court**

Any Federal or State Court within the United States of America or any formally constructed court of competent jurisdiction or equivalent tribunal (including any arbitral tribunal and hearings within national patent, trade mark or intellectual property offices or the World Intellectual Property Organization) with authority to deliver legally binding judgments, awards or orders on the matter at issue, or any formal,

arbitration or dispute resolution conducted by an independent professional arbitrator or mediator within the **Territorial Limits**.

### Cyber Loss
Any loss, damage, liability, claim, cost or expense of whatsoever nature directly or indirectly caused by, contributed to by, resulting from, arising out of or in connection with any Cyber Act or Cyber Incident including, but not limited to, any action taken in controlling, preventing, suppressing or remediating any Cyber Act or Cyber Incident.

### Cyber Act
An unauthorised, malicious or criminal act or series of related unauthorised, malicious or criminal acts, regardless of time and place, or the threat or hoax thereof, involving access to, processing of, use of or operation of any Computer System.

### Cyber Incident
Any error or omission or series of related errors or omissions involving access to, processing of, use of or operation of any Computer System; or any partial or total unavailability or failure or series of related partial or total unavailability or failures to access, process, use or operate any Computer System.

### Data
Information, facts, concepts, code or any other information of any kind that is recorded or transmitted in a form to be used, accessed, processed, transmitted or stored by a Computer System.

### Data Processing Media
Any property insured by this Policy on which Data can be stored but not the Data itself.

### Declarations
The Declarations attached to and forming part of this **Policy**.

### Directors & Officers
All person who were, or now are, directors or officers of the **Insured** or any **Indemnified Party**, including their estates, heirs, legal representatives or assigns in the event of their death, incapacity or bankruptcy.

### Employee
Any person hired for a wage, salary, fee or payment to perform work for the **Insured** under a contract of service, written and express and whose employment status can be verified by documentation existing at the time of the event giving rise to **Insured Loss** or a **Claim**, including any intern or volunteer, but only while such persons are acting solely within the scope of their duties to the **Insured**.

### Extended Notification Period
The period of thirty (30) days following the natural expiry of the **Policy Period** during which an **Action** or **Licensing Request** under Insuring Clauses A. or B. that arose within a period of thirty (30) days prior to expiry of the **Policy Period** may be notified to **Insurers**. In the event that the **Policy** is cancelled by the **Insured** during the **Policy Period**, the **Extended Reporting Period** will not apply.

### Inception
The date on which the cover under this **Policy** commences, as specified in the **Declarations**.

### Indemnified Party
Any party to which the **Insured** has provided a written contract of indemnity in respect of the events specified in Insuring Clause B., provided that such indemnity is evidenced by an **Insured Agreement**.

### Infringement Withdrawal
The withdrawing from sale or the distribution chain, recovery of possession to the **Insured** or delivery up for destruction of any **Insured Products** or in respect of **Insured Business Activity**, where such is ordered by a **Court** in respect of an **Action** hereunder, or is undertaken by the **Insured** or an **Indemnified Party** as part of an agreed **Settlement**.

### Injunctive Relief
An order made by a **Court** prohibiting the **Insured** and/or an **Indemnified Party** from continuing the acts of infringement specified in the order.



**Insolvent**

The **Insured** shall be deemed insolvent upon the appointment in relation to the **Insured** of a trustee in bankruptcy, receiver, administrator, administrative receiver, liquidator, or equivalent office holder; or if the **Insured** becomes the subject of a voluntary arrangement; has passed a resolution for its winding up or has anything similar or analogous happen in relation to it.

**Named Insured**

The entity specified as **Named Insured** in the Schedule.

**Insured**

  i.   The entity specified as **Named Insured** and **Insured** in the **Schedule;**
 ii.   Any **Subsidiary** but only during the time period such qualifies as a **Subsidiary;**
iii.   Any Directors & Officers or Employee of any of (a) and (b) above, but only while acting solely within the scope of their duties as such during the **Policy Period.**

**Insured Agreement**

Any written license, confidentiality, non-disclosure, marketing or other agreement which controls the exploitation of **Insured Intellectual Property** or the manufacture, sale, distribution or use of a **Insured Product** or the provision of the **Insured Business Activities** to which the **Insured** is a party and which has been disclosed to **Insurers** in writing by or on behalf of the **Insured** either at **Inception** of this **Policy** or during the **Policy Period** and which **Insurers** have accepted and listed in the **Declarations**.

**Insured Business Activities**

All business activities of the **Insured** that have been declared to **Insurers** in writing by or on behalf of the **Insured** either at inception of this **Policy** or during the **Policy Period** and which **Insurers** have accepted in writing and are listed in the **Declarations**.

**Insured Intellectual Property**

Any or all of the following that have been declared to **Insurers** in writing by or on behalf of the **Insured** either at inception of this **Policy** or during the **Policy Period** and which is listed in the **Declarations**:

*Copyright*
 Any copyright subsisting in a work capable of protection by copyright within the **Territorial Limits**, of which the **Insured** is the owner or an exclusive licensee; or

Any work capable of protection by database right within the **Territorial Limits** of which the **Insured** is the creator or an exclusive licensee.

*Design*
Any registered design registered or applied to be registered in the name of the **Insured** or of which the **Insured** is an exclusive licensee, which has been filed with a design registrar within the **Territorial Limits**; or

Any unregistered design right capable of protection by design right within the **Territorial Limits** of which the **Insured** is the owner or an exclusive licensee including any design right in a semiconductor topography.

*Domain Name*
Any legal rights in a name held by the **Insured** that identifies one or more Internet protocol addresses and is used in connection with an URL to identify the location of particular Web pages.

*Mark*
Any registered trade or service mark registered or applied to be registered in the name of the **Insured** or of which the **Insured** is an exclusive licensee, which has been filed in a trade mark office within the **Territorial Limits**; or

Any unregistered trade or service mark, brand name, domain name, logo, appellation of origin, device or get-up (includingthe shape or get-up of a **Insured Product**) rights within the **Territorial Limits** of which the **Insured** is the owner or an exclusive licensee.

*Patent*
Any utility patent, method patent, design patent, innovation patent, petty patent, utility model or similar right that has been granted or issued to or applied for by the **Insured** or of which the **Insured**

is an exclusive licensee, which has been filed in a national or regional patent office within the **Territorial Limits.**

*Trade Secret*

Any information owned by the **Insured** or of which the **Insured** is an exclusive licensee and which has been reduced to written legible form, including, but not limited to, a formula, pattern, compilation, program, device, method, technique or process, which:

i.    derives independent economic value, actual or potential, from not being generally known, and not being readily ascertainable through proper means by other persons who would obtain economic advantage from its disclosure; and

ii.   is the subject of appropriate security measures (in view of its commercial value) to maintain secrecy; and

iii.  is used, or intended to be used in commerce (and is so capable of being used), and does not include information which is the subject of a *Patent*, *Design*, *Copyright*, *Mark*, *Domain Name* as defined herein.

**Insured Loss**

Any of the following that are specified in the **Declarations** in respect of each Insuring Clause:

i.    **Representative Fees & Expenses**;

ii.   **Liability**;

iii.  **Withdrawal Expenses;**

iv.   **Loss Mitigation**.

**Insured Product**

Any product of the **Insured** (including without limitation, any process by which such product is made) which has been declared to **Insurers** in writing by or on behalf of the **Insured** either at inception of this **Policy** or during the **Policy Period**, and which **Insurers** have accepted in writing and is listed in the **Declarations**.

**Insurers**

Certain subscribing underwriters at Lloyd's and/or certain Insurance Companies as shown in the **Declarations** who have a share in this insurance, each for their stated proportion.

**Legal Action**

Any judicial proceeding, demand, arbitration, dispute resolution or other cause of action, including without limitation any work undertaken by the **Representative** in order to communicate, refute, defuse or resolve any matter.

**Liability**

Any sum payable by the **Insured** or an **Indemnified Party** to compensate the complaining party for actual or compensatory damages, past royalties, lost profits or other restitutionary payments  which is awarded by a **Court** (inclusive of any interest) or agreed as part of a **Settlement** in connection with an **Action** or **Licensing Request** covered by this **Policy**.

**Licensing Request**

Any written notification made directly to the **Insured** or an **Indemnified Party** by a **Non Practicing Entity** or **Competitor** indicating that they consider that the **Insured** or the **Indemnified Party** may require a license to the **Non-Practicing Entity's** or **Competitors'** intellectual property rights.

**Loss Mitigation**

Any costs and expenses reasonably and necessarily incurred by the **Insured** following **Insurers'** prior written approval (such approval not to be unreasonably withheld or delayed) in respect of measures taken by the **Insured** for the sole purpose of mitigating an **Action**, **Licensing Request** or **Circumstance**, provided that:

i.    the **Insured** has previously notified **Insurers** of the **Action**, **Licensing Request** or **Circumstance**;

ii.   the relevant costs and expenses are less than the expected value of the **Liability** which would otherwise have been incurred in respect of any **Claim**; or

iii. the costs do not include any provision for salaries or other remuneration of any **Directors & Officers** or **Employees** of the **Insured** or employees of an **Indemnified Party**.

**Non-Practicing Entity**

Any owner or exclusive licensee (including any parent, subsidiary or associated entity thereof) of a **Third Party Patent** that is not a **Competitor**.

**Opponents Costs**

Any legal costs and disbursements incurred by the opponent in connection with any **Action** or **Licensing Request** that the **Insured** is ordered to pay by a **Court**, or that have been agreed as part of a **Settlement**. Any and all **Opponents Costs** paid by **Insurers** shall be exclusive of any VAT (or any equivalent sales tax) recoverable by the opponent.

In the event that the **Insured** is required to provide security to a **Court** in respect of **Opponents Costs**, then this **Policy** shall stand as such security, subject to **Insurers'** prior written approval.

**Policy**

This policy together with the **Declarations** and any endorsement, extension or condition agreed between the parties, and any other document expressed to be incorporated by reference. All documents comprising the **Policy** shall be read together as and evidence  one contract of insurance.

**Policy Period**

The period of time in which this **Policy** will be in force, as specified in the **Declarations**.

**Representative**

A lawyer, advocate, barrister, patent or trade mark agent, expert witness or other appropriately qualified person or adviser approved and appointed by **Insurers** to act on behalf of the **Insured** in accordance with Section 4 Claims Conditions f) i. and all other  terms and conditions of this **Policy**.

**Representative Fees and Expenses**

Any professional fees, expenses and other disbursements properly and reasonably incurred and charged by any **Representative** after prior written approval of **Insurers** in connection with any **Action**, **Licensing Request** or **Circumstance** including, but not limited, to:

i. the reasonable fees of expert witnesses (other than those who are **Directors & Officers** or **Employees** of the **Insured**);

ii. the reasonable attendance expenses of any other witnesses called by the **Representative** on behalf of the **Insured** (other than those who are **Directors & Officers** or **Employees** of the **Insured)**;

iii. any reasonable travelling and or subsistence expenses incurred by the **Insured**;

iv. the costs of any **Counterclaim** or **Appeal** approved in writing by **Insurers;** and

v. any **Opponents Costs**.

Any  **Representative Fees and Expenses** paid by **Insurers** to the **Insured** shall be exclusive of any Value Added Tax (or any equivalent sales tax) recoverable by the **Insured**.

**Prior Liability Date**

The date specified in the **Declarations** before which **Insurers** shall have no responsibility for  any proportion of **Liability** or **Settlement**.

**Self-Insured Retention**

The amount specified in the **Declarations** which the **Insured** must first pay in respect of any one **Claim** accepted under this **Policy** before **Insurers** become liable to make any payment hereunder.

**Settlement**

Any written resolution approved by **Insurers** in writing and agreed as a legally binding contract between the **Insured** and the opponent to end an **Action** or resolve a **Licensing Request**, either before or after the **Action** begins in the **Court**.

**Standard**

A set of technical specifications or draft specifications developed or managed by a governmental organization or multilateral industry association or association of industry professionals, including but

not limited to such bodies as the International Standards Organization (ISO), the European Committee for Standardization (CEN), European Committee for Electrotechnical Standardization (CENELEC), the European Telecommunications Standards Institute (ETSI), the Institute for Reference Materials and Measurements (IRMM), the Institute of Electrical and Electronics Engineers (IEEE), American National Standards Institute (ANSI), ASTM International, the Deutsches Institut für Normung (DIN) and the Internet Engineering Task Force (IETF)), which defines key features and elements necessary to ensure interoperability of products, services and processes supplied or to be supplied by multiple vendors or participants in an industry.

### Standards Essential Patents

Patents that are necessarily practiced by a product or service practicing or complying with a version of a **Standard**.

### Subsidiary

Any corporation, limited liability company, or partnership while more than 50% of the outstanding voting securities or shares that represent the present right to vote for the election or appointment or designation of such entity's directors, managers or equivalent are directly owned or controlled by the **Named Insured** and is listed as an **Insured**.

### Territorial Limits

The countries and territories specified in the **Declarations**.

### Third Party

Any person or entity other than the **Insured** or any party of an **Insured Agreement**.

### Third Party Patent

Any utility patent, method patent, design patent, innovation patent, petty patent, utility model or similar right that has been granted or issued by a national or regional patent office within the **Territorial Limits**, that is not a **Standards Essential Patent**.

### Third Party Trade Secrets

Any information owned by a third party which has been reduced to written legible form, including, , a formula, pattern, compilation, program, algorithm, device, method, technique or process which:

 i.   derives independent economic value, actual or potential, from not being generally known, and not being readily ascertainable through proper means by other persons who would obtain economic advantage from its disclosure; and

 ii.  is the subject of appropriate security measures (in view of its commercial value) to maintain secrecy;

that is used, or is intended to be used in commerce (and is so capable of being used).

### Withdrawal Expenses

The costs and expenses reasonably and necessarily incurred by the **Insured** after prior written approval of **Insurers** arising solely and directly out of an **Infringement Withdrawal**, including, :

 i.   transportation costs in withdrawing **Insured Products** from the distribution chain;

 ii.  rent of additional warehouse space;

 iii. hire of additional persons, other than regular **Employees** of the **Insured** or an **Indemnified Party**, and of additional accommodation for such persons;

 iv.  remuneration paid to **Employees** of the **Insured** or employees of an **Indemnified Party** for overtime;

 v.   out of pocket expenses incurred by personnel under paragraphs (iii) and (iv) above, including transportation, other than to and from the **Employees** or employees of an **Indemnified Party**' normal place of work;

 vi.  reasonable and necessary costs incurred by retailers, wholesalers, distributors and an **Indemnified Party** arising exclusively out of the recalling of **Insured Products** on behalf of the **Insured**; and

vii.   costs incurred by the **Insured** or an **Indemnified Party** for the re-labelling and/or destruction and disposal of the **Insured Products**, including destruction and disposal of packaging and labelling material that cannot be reused.



# 9.  Short Rate Cancellation Table

**For Policies written for one year:-**

| Days Policy in Force | | Percent of annual premium | Days Policy in Force | | Percent of annual premium |
|---|---|---|---|---|---|
| 1 | | 5 | 154 - 156 | | 53 |
| 2 | | 6 | 157 - 160 | | 54 |
| 3 -- 4 | | 7 | 161 - 164 | | 55 |
| 5 -- 6 | | 8 | 165 - 167 | | 56 |
| 7 -- 8 | | 9 | 168 - 171 | | 57 |
| 9 - 10 | | 10 | 172 - 175 | | 58 |
| 11 - 12 | | 11 | 176 - 178 | | 59 |
| 13 - 14 | | 12 | 179 - 182 | (6 months) | 60 |
| 15 - 16 | | 13 | 183 - 187 | | 61 |
| 17 - 18 | | 14 | 188 - 191 | | 62 |
| 19 - 20 | | 15 | 192 - 196 | | 63 |
| 21 - 22 | | 16 | 197 - 200 | | 64 |
| 23 - 25 | | 17 | 201 - 205 | | 65 |
| 26 - 29 | | 18 | 206 - 209 | | 66 |
| 30 - 32 | (1 month) | 19 | 210 - 214 | (7 months) | 67 |
| 33 - 36 | | 20 | 215 - 218 | | 68 |
| 37 - 40 | | 21 | 219 - 223 | | 69 |
| 41 - 43 | | 22 | 224 - 228 | | 70 |
| 44 - 47 | | 23 | 229 - 232 | | 71 |
| 48 - 51 | | 24 | 233 - 237 | | 72 |
| 52 - 54 | | 25 | 238 - 241 | | 73 |
| 55 - 58 | | 26 | 242 - 246 | (8 months) | 74 |
| 59 - 62 | (2 months) | 27 | 247 - 250 | | 75 |
| 63 - 65 | | 28 | 251 - 255 | | 76 |
| 66 - 69 | | 29 | 256 - 260 | | 77 |
| 70 - 73 | | 30 | 261 - 264 | | 78 |
| 74 - 76 | | 31 | 265 - 269 | | 79 |
| 77 - 80 | | 32 | 270 - 273 | (9 months) | 80 |
| 81 - 83 | | 33 | 274 - 278 | | 81 |
| 84 - 87 | | 34 | 279 - 282 | | 82 |
| 88 - 91 | (3 months) | 35 | 283 - 287 | | 83 |
| 92 - 94 | | 36 | 288 - 291 | | 84 |
| 95 - 98 | | 37 | 292 - 296 | | 85 |
| 99 - 102 | | 38 | 297 - 301 | | 86 |
| 103 - 105 | | 39 | 302 - 305 | (10 months) | 87 |
| 106 - 109 | | 40 | 306 - 310 | | 88 |
| 110 - 113 | | 41 | 311 - 314 | | 89 |
| 114 - 116 | | 42 | 315 - 319 | | 90 |
| 117 - 120 | | 43 | 320 - 323 | | 91 |
| 121 - 124 | (4 months) | 44 | 324 - 328 | | 92 |
| 125 - 127 | | 45 | 329 - 332 | | 93 |
| 128 - 131 | | 46 | 333 - 337 | (11 months) | 94 |
| 132 - 135 | | 47 | 338 - 342 | | 95 |
| 136 - 138 | | 48 | 343 - 346 | | 96 |
| 139 - 142 | | 49 | 347 - 351 | | 97 |
| 143 - 146 | | 50 | 352 - 355 | | 98 |
| 147 - 149 | | 51 | 356 - 360 | | 99 |
| 150 - 153 | (5 months) | 52 | 361 - 365 | (12 months) | 100 |

**For Policies written for more or less than one year:-**

1.  If insurance has been in force for 12 months or less, apply the standard short rate table for annual insurances to the full annual premium determined as for an insurance written for a term of one year.

2.  If insurance has been in force for more than 12 months:

    (a)  Determine full annual premium as for an insurance written for a term of one year.

    (b)  Deduct such premium from the full insurance premium, and on the remainder calculate the pro rata Earned Premium on the basis of the ratio of the length of time beyond one year the insurance has been in force to the length of time beyond one year for which the insurance was originally written.

    (c)  Add premium produced in accordance with items (a) and (b) to obtain Earned Premium during full period insurance has been in force.

Policy Number: ██████████████

## SECURITY DETAILS

### REFERENCES

UMR (Unique Market Reference): B1262BW0341324

Date contract printed to PDF: 10:47 16 July 2024

## SIGNED UNDERWRITERS

**Tokio Marine Kiln**                                                                 **Slip Leader**



⚓ **TMK 510/1880**

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| E | P | A | 0 | 9 | 5 | G | 2 | 4 | A | A | | |

510 reference
E8

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| E | P | A | 1 | 6 | 2 | X | 2 | 4 | A | A | | |

1880 reference
E8

**100% Written**

**100% Signed**

09:18 16 July 2024

Lloyd's Underwriter Syndicate No. 0510 KLN, London, England 80%, Lloyd's Underwriter Syndicate No. 1880 TMK, London, England 20% - Submit all signings under one LPAN with one SNAD

Ellie Webb

**Bound as Lloyd's Leader**

Policy Number: █████████████

## SETTLEMENT INFORMATION

### Allocation of Premium to Coding

E8 at 100%

### Allocation of Premium to Year of Account

2024

### Terms of Settlement

| | |
|---|---|
| Settlement Due Date: | 14 October 2024 |
| Instalment Premium Period of Credit: | 0 |
| Adjustment Premium Period of Credit: | 0 |

Tokio Marine Kiln

**Lloyd's Leader**

Ellie Webb